879 P.2d 1198

Virlon L. SMITH, Sr., Individually and as Personal Representative of the Estate of Dennis Smith, Deceased; Abel Cabello; and Fifty–Five Well Servicing, Inc., Plaintiffs–Appellants,

v.

HALLIBURTON COMPANY and Stevens & Tull, Inc., Defendants–Appellees,

and

Dana Corporation; Wilson Manufacturing Co., a Subsidiary of Dana Corporation; Wilson–Wichita, Inc.; and Hartford Accident and Indemnity Company, Cross–Defendants–Appellees,

and

Gregory Rig Service and Sales, Inc., Defendant–Cross–Claimant–Appellant.

No. 13870.

Court of Appeals of New Mexico.

April 12, 1994.

Certiorari Denied May 16, 1994.

Mark Stout, Lowell Stout, Stout & Stout, Hobbs, for plaintiffs-appellants Virlon L. Smith, Sr., Individually and as Personal Representative of the Estate of Dennis Smith, Deceased, and Abel Cabello.

Harold L. Hensley, Jr., James M. Hudson, Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, for plaintiff-appellant Fifty–Five Well Servicing, Inc.

C. Barry Crutchfield, Templeman & Crutchfield, Lovington, for defendant-cross-claimant-appellant Gregory Rig Service and Sales, Inc.

John A. "Jad" Davis, Jr., Kemp, Smith, Duncan & Hammond, P.C., Midland, Texas, Bruce T. Thompson, Civerolo, Hansen & Wolf, P.A., Albuquerque, for defendants-cross-defendants-appellees Dana Corp., Wilson Mfg. Co., and Hartford Acc. and Indem. Co.

## OPINION

MINZNER, Chief Judge.

Plaintiffs and Defendant Gregory Rig Service and Sales, Inc. (hereinafter "Plaintiffs") appeal from a district court decision granting motions for summary judgment and dismissing an amended complaint based on negligence, breach of warranty, and products liability and a cross-claim filed by Gregory Rig. We must determine whether the law of the forum or the law of the state of incorporation controls Plaintiffs' right to sue Defendant Wilson Manufacturing Co., the actual manufacturer of the product, and Defendant Wilson–Wichita, Inc., which merged with Wilson Manufacturing after the product was sold, but dissolved prior to the date of the accident. We also must determine whether New Mexico has personal jurisdiction over Defendant Dana Corporation, the parent company. We conclude that the law of the state of incorporation controls Plaintiffs' right to sue Wilson Manufacturing and Wilson–Wichita, and that New Mexico lacks personal jurisdiction over Dana Corporation. Therefore, we affirm the district court's order.

## BACKGROUND

The amended complaint and cross-claim arise out of an accident that occurred on April 5, 1989 when the racking or tubing board separated from the derrick of a well servicing unit. The complaint alleged that a well servicing unit owned by Plaintiff Fifty–Five Well Servicing, Inc. was negligently designed or constructed by Gregory Rig, Dana Corporation, its subsidiaries or predecessors in interest and caused both personal injuries and property damage.

The material considered by the district court in granting summary judgment contains the following undisputed facts relating to the allegations of the complaint. Wilson Manufacturing manufactured the well servicing unit, which was sold in 1976 to Fifty–Five Well Servicing. Gregory Rig did certain repair work on the unit after it was purchased. In 1977, Wilson Manufacturing merged with Wilson–Wichita, which was incorporated under Delaware law and was a wholly-owned subsidiary of Dana Corporation. Dana Corporation is a Virginia corporation with its principal office and place of business in Ohio. The record indicates that Dana Corporation formed Wilson–Wichita to acquire the assets of Wilson Manufacturing and another closely-held corporation. Wilson–Wichita had one director, an officer of Dana Corporation; Wilson–Wichita's secretary was Dana Corporation's counsel. The record also indicates that Wilson–Wichita contemplated selling Wilson Manufacturing as soon as possible. Following the merger, Wilson Manufacturing continued to operate as a division of Wilson–Wichita, but, in anticipation of the sale, most or all of its assets were transferred to Wilson Oil Rig Manufacturing Co. (hereinafter

"WORMCO"). As anticipated, WORMCO was sold in 1981 to LTV, and Wilson–Wichita was dissolved on December 31, 1981. An escrow account was established from proceeds of the sale of WORMCO for purposes of paying claims against Wilson–Wichita.

Dana Corporation moved for an order dismissing the complaint against it for lack of personal jurisdiction. Dana Corporation also moved for summary judgment on all causes of action against it. Wilson–Wichita and Wilson Manufacturing also moved to dismiss the claims against them as barred by Delaware law, which prohibits suit against Delaware corporations more than three years after dissolution. Advancing the same arguments, Dana Corporation and Wilson–Wichita both moved to dismiss the cross-claim.

The district court granted summary judgment to Dana Corporation, Wilson Manufacturing, and Wilson–Wichita on the basis that there was no genuine issue of fact to be submitted; that Plaintiffs' claim against Wilson–Wichita was barred under Delaware law; that New Mexico lacked personal jurisdiction over Dana Corporation; and that Defendants were entitled to summary judgment as a matter of law. The court also determined that the claims against Hartford Accident and Indemnity Co. were moot. The parties apparently agree that the district court's ruling effectively disposed of the claim against Wilson Manufacturing. The complaint and cross-claim against Dana Corporation, Wilson–Wichita, Wilson Manufacturing, and Hartford Accident and Indemnity Company were dismissed with prejudice. Plaintiffs have appealed, claiming that the district court erred in granting summary judgment because (1) New Mexico, not Delaware, law should have been applied to determine whether their claim survived the dissolution of Wilson–Wichita; and (2) the district court did have personal jurisdiction over Dana Corporation for various reasons.

## DISCUSSION

■ Summary judgment is a remedy to be used only when there are no genuine issues of material fact so that the movant is entitled to judgment as a matter of law. *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992); SCRA 1986, 1–056(C) (Repl. 1992). If there is no dispute regarding facts and only the legal effect of the facts remains to be determined, summary judgment is appropriate. *Gardner–Zemke Co. v. State*, 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990). The parties appear to agree that the material facts are not in issue. Rather, they disagree on the proper application of the law to the facts.

We discuss the issues as Plaintiffs have argued them. However, we believe the issues raised are related.

Plaintiffs in products liability actions such as this one initially must persuade the court of the chosen forum that it has personal jurisdiction. That may not be an easy task. If the successor corporation is a foreign corporation, an injured plaintiff may have difficulty obtaining personal jurisdiction over the successor in a convenient forum. *See Miller v. Honda Motor Co.*, 779 F.2d 769, 772 (1st Cir.1985).

> As a general rule, the mere relationship of parent corporation and subsidiary corporation is not in itself ˙a˙ sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state. A foreign parent corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in the state. Ownership coupled with other factors may, however, give rise to a sufficient jurisdictional basis.

2 James W. Moore et al., *Moore's Federal Practice* ¶ 4.41–1[6], at 4–370 to –371 (2d ed. 1993) (footnotes omitted).

We first address the question of whether Delaware law controls the effect of Wilson–Wichita's dissolution, not only because Plaintiffs make that argument first, but also because we think their argument concerning Dana Corporation arises in part out of that

company's relationship with Wilson–Wichita. In other words, Plaintiffs ask us to find that New Mexico has personal jurisdiction over Dana Corporation in part because of that entity's relationship to its subsidiary. If Plaintiffs' cause of action against Wilson–Wichita survives, they would not need to rely on New Mexico's exercise of personal jurisdiction over Dana Corporation. If it does not, that might be a factor in considering the existence of personal jurisdiction over the parent corporation.

### A. Which State's Law Controls the Amenability of Wilson–Wichita and Wilson Manufacturing to Suit

In this case, Plaintiffs seek to impose liability on Wilson–Wichita, with which Wilson Manufacturing merged, for a product the latter sold before the merger. We assume but need not decide that Plaintiffs would have been entitled to assert successor liability against Wilson–Wichita as a successor to Wilson Manufacturing. Because Wilson–Wichita was dissolved more than three years prior to the filing of this action, and because we conclude that Delaware law controls the effect of dissolution, we need not decide whether, but for the dissolution, Wilson–Wichita would have been subject to successor liability, nor whether its predecessor's contacts with New Mexico were attributable to it for purposes of New Mexico acquiring personal jurisdiction. *See City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 454–55 (4th Cir.1990) (discussing authority and reasons behind rule permitting imputation of a predecessor's actions upon its successor for purposes of liability as well as jurisdiction).

Plaintiffs contend that New Mexico law, rather than Delaware law, should be applied to the dissolution of Wilson–Wichita. Based on that contention, they argue that the district court erred in concluding that their cause of action was barred. We disagree.

■ Under common law, all actions to which a corporation was a party were abated upon dissolution of that corporation. *Okla-*

*homa Natural Gas Co. v. Oklahoma*, 273 U.S. 257, 259, 47 S.Ct. 391, 392, 71 L.Ed. 634 (1927). That rule produced a harsh result for those who had filed suit against a corporation before its dissolution. In order to ease that harsh effect, a number of states have enacted corporate survival statutes to extend the period for settling claims against a dissolved corporation. *See id.; see also* 3 *Model Business Corporation Act Annotation* § 14.07, at 1505 (3d ed. 1993 Supp.). The majority of those statutes have a specified time in which suit can be brought against a dissolved domestic corporation. 3 *Model Business Corporation Act Annotated, supra* § 14.07, at 1505; *see also* 16A William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 8143, at 443–45 (Rev. Vol.1988) [hereinafter *Fletcher* ]. The period during which actions may be brought against a dissolved corporation varies from two to five years. 3 *Model Business Corporation Act Annotated, supra* § 14.07, at 1505. Delaware law is illustrative. Delaware law provides that a Delaware corporation is open to suit for three years following the dissolution of the corporation, and after three years, all suits are barred. Del.Code Ann. tit. 8, § 278 (Repl.Vol.1991). "Ten jurisdictions place no express time limit on survival of remedies...." 3 *Model Business Corporation Act Annotated, supra* § 14.07, at 1505. New Mexico is within this group. *Id.*

Plaintiffs argue that corporate dissolution or survival statutes and statutes of limitation are analogous. They urge us to apply New Mexico law on the ground that the statutory period within which suit may be brought against a dissolved corporation is a procedural provision, and the law of the forum should control. *See Nez v. Forney*, 109 N.M. 161, 162, 783 P.2d 471, 472 (1989) (New Mexico courts are to apply the forum state's statute of limitations). Plaintiffs' argument, however, is contrary to conventional wisdom. "The statutory period has been construed as a limitation upon the capacity to sue or be sued rather than as a statute of limitations." 16A *Fletcher, supra* § 8144, at 459. Our research indicates that the majority of other jurisdic-

tions have determined that corporate survival statutes are not procedural provisions that are analogous to statutes of limitation; rather, they contain matters to be controlled by the law of the state of incorporation. *See, e.g., Sedgwick v. Beasley,* 173 F.2d 918, 919 (D.C.Cir.1949); *Indiana Nat'l Bank v. Churchman,* 564 N.E.2d 340, 342 (Ind.Ct. App.1990) ("the statute gives life to a right otherwise destroyed."); *Leviathan Gas Pipeline Co. v. Texas Oil & Gas Corp.,* 620 So.2d 415, 418 (La.Ct.App.1993); *Van Pelt v. Greathouse,* 364 N.W.2d 14, 20 (Neb.1985) ("a statute of limitations relates to the remedy only and not to substantive rights ... a survival statute operates on the right or claim itself" (citation omitted)); 16A *Fletcher, supra* § 8167, at 542 (statutes continuing corporate life after dissolution are not applicable to foreign corporations).

■ Since we are not bound by the law of other jurisdictions, however, Plaintiffs urge that this Court apply New Mexico law by using the interest analysis approach applied by California in *North American Asbestos Corp. v. Superior Court,* 180 Cal.App.3d 902, 225 Cal.Rptr. 877 (1986). In that case, an intermediate appellate court decided, by a divided panel, that a dissolved Illinois corporation was subject to suit brought by California residents alleging injury from asbestos. The defendant corporation conceded that it was licensed to conduct business in California during the period in which its activities within California gave rise to the lawsuit. We are not in a position to do as Plaintiffs ask. Even though New Mexico has not specifically decided whether a corporate survival statute is procedural or substantive, New Mexico Supreme Court rule and New Mexico statutes indicate that Delaware law controls the effect of Wilson–Wichita's dissolution.

New Mexico SCRA 1986, 1–017(B) (Repl. 1992) (Rule 17) states that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized, unless some statute of this state provides to the contrary." In *Crawford v. Refiners Co–Operative Ass'n,* 71 N.M. 1, 3,

375 P.2d 212, 213 (1962), our Supreme Court was presented with issues similar to those facing this Court. *Crawford* was decided under the predecessor version of Rule 17, which contained language identical to the current rule. Following that language, the Court applied California law, rather than New Mexico law, to determine if the dissolved corporation could be sued. *Id.* Under *Crawford,* the law of the state of incorporation applies, and we are bound by that precedent. *Alexander v. Delgado,* 84 N.M. 717, 718, 507 P.2d 778, 779 (1973).

Plaintiffs suggest that the New Mexico dissolution statute is a statute that fits the language of Rule 17 as a "statute of this state that provides to the contrary," and thus New Mexico law should be applied to the present case. *See* NMSA 1978, § 53–16–24 (Repl. Pamp.1983). We are not persuaded. Rule 17 expresses the general rule. *See Sedgwick,* 173 F.2d at 919. Further, when statutory language is unambiguous, that language must be given its clear effect. *State v. Jonathan M.,* 109 N.M. 789, 790, 791 P.2d 64, 65 (1990).

■ Section 53–16–24 addresses the survival of remedies after the "dissolution of a corporation." However, that statute is a part of the New Mexico Business Corporation Act, NMSA 1978, §§ 53–11–1 to –18–12 (Repl.Pamp.1983 & Cum.Supp.1992), which defines the term "corporation" to mean "a corporation for profit subject to the provisions of the Business Corporation Act, *except a foreign corporation.*" (Emphasis added.) Section 53–11–2(A). The legislature has passed laws specific to foreign corporations which are codified at NMSA 1978, Sections 53–17–1 to –20. Those sections do not contain a dissolution provision that is inconsistent with Rule 17. We conclude that Wilson–Wichita is subject to the New Mexico statutes which are specific to foreign corporations rather than to Section 53–16–24, which controls the dissolution of New Mexico corporations.

For the foregoing reasons, Delaware law controls whether Wilson–Wichita is amenable to suit following dissolution. That being the

case, the district court did not err in granting Wilson–Wichita (and Wilson Manufacturing) summary judgment.

### B. *Whether New Mexico Has Personal Jurisdiction Over Dana Corporation*

■ The basic principle underlying the concept of personal jurisdiction is whether there is a reasonable basis for a state's exercise of jurisdiction. 1 *Restatement (Second) of Conflict of Laws* § 24(1) cmt. b (Supp. 1989). New Mexico's long-arm statute, NMSA 1978, § 38–1–16 (Repl.Pamp.1987), extends its legislative expression of personal jurisdiction to the limits of due process. *Allen v. Toshiba Corp.*, 599 F.Supp. 381, 388 (D.N.M.1984). In New Mexico, under that statute, personal jurisdiction may be exercised over a non-resident defendant if three conditions exist: the act complained of is one of the enumerated acts in the New Mexico long-arm statute; the plaintiff's action arises out of an enumerated act; and the defendant has established minimum contacts sufficient to satisfy due process. *Salas v. Homestake Enters., Inc.*, 106 N.M. 344, 345, 742 P.2d 1049, 1050 (1987).

The New Mexico long-arm statute states:

A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) the transaction of any business within this state;

(2) the operation of a motor vehicle upon the highways of this state;

(3) the commission of a tortious act within this state....

Section 38–1–16(A). Plaintiffs' argument for personal jurisdiction, although it has several facets or bases, depends upon the soundness and propriety of imputing the activities of Wilson Manufacturing and Wilson–Wichita to Dana Corporation. Thus, Plaintiffs are contending that Dana Corporation either transacted business in this state or committed a tortious act through its subsidiary.

■ Plaintiffs bear the burden of establishing the basis of personal jurisdiction on which they rely. *See Neagos v. Valmet–Appleton, Inc.*, 791 F.Supp. 682, 686 (E.D.Mich.1992); *see also Swindle v. General Motors Acceptance Corp.*, 101 N.M. 126, 129, 679 P.2d 268, 271 (Ct.App.) (plaintiff had burden of proving jurisdictional allegation that co-defendants were "involved in an agent-principal relationship"), *cert. denied,* 101 N.M. 77, 678 P.2d 705 (1984). Plaintiffs rely on findings of fact and conclusions of law from the Texas district court entered in *Hartford Accident & Indemnity Co. v. LTV Corp.*, No. CA–3–82–0679–D (N.D.Tex., filed July 11, 1984), to establish Dana Corporation's express assumption of liability for the actions of Wilson–Wichita. We think this reliance is misplaced. On appeal in Texas, Dana Corporation expressed its concern that the district court's decision might be misread to say that Dana Corporation had vicarious liability for Wilson–Wichita. The Fifth Circuit stated that such a reading would be incorrect because "[t]he trial court had no need of a finding of vicarious liability as a predicate to its judgment...." *Hartford Accident & Indem. Co. v. LTV Corp.*, 774 F.2d 677, 681 (5th Cir.1985).

■ Plaintiffs also argue that Dana Corporation is collaterally estopped from relitigating the issue of its liability due to the Texas district court's decision. Collateral estoppel applies only to questions of fact and law actually litigated and necessarily determined. *Reeves v. Wimberly*, 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct.App.1988). The district court's decision did not concern Dana Corporation's liability for Wilson–Wichita's prior activities. Rather, it was a declaratory judgment action that was concerned with determining whether Dana Corporation or LTV was responsible for reimbursing Hartford Accident and Indemnity Co. for a suit filed against Wilson–Wichita prior to its dis-

solution concerning a rig manufactured prior to the sale of WORMCO to LTV. The issues litigated in Texas concerned liability pursuant to contract between Dana Corporation and LTV. Further, we cannot say that Dana Corporation had a full and fair opportunity in Texas to litigate the issue of express assumption of liability as it bears upon personal jurisdiction in this case. Therefore, the doctrine of collateral estoppel does not assist Plaintiffs.

Plaintiffs have urged us to disregard the corporate structure and allow them to pursue Dana Corporation as the responsible party. *See Miller,* 779 F.2d at 772. They contend in effect that New Mexico may exercise personal jurisdiction over Dana Corporation because its subsidiary would be liable in tort as Wilson Manufacturing's successor. *See City of Richmond,* 918 F.2d at 454–55. As noted earlier, we did not address either the issue of successor liability or personal jurisdiction regarding Wilson–Wichita because we concluded that Delaware law controls the effect of dissolution. Regarding Dana Corporation, we need not address the issue of successor liability because we conclude that New Mexico lacks personal jurisdiction. We note that the law of successor liability is expanding the reach of personal jurisdiction over foreign corporations. *See Simmers v. American Cyanamid Corp.,* 394 Pa.Super. 464, 576 A.2d 376, 390 (1990) ("In Pennsylvania, it is now the law that when the successor is subject to the liabilities of its predecessor, the acts of a predecessor corporation may be attributed to its successor for the purposes of determining whether jurisdiction is proper."), *appeal denied,* 527 Pa. 649, 593 A.2d 421, *cert. denied sub nom., Chromalloy Pharmaceutical, Inc. v. Boyer,* 502 U.S. 813, 112 S.Ct. 62, 116 L.Ed.2d 38 (1991). Even under the most expansive view of personal jurisdiction, however, Plaintiffs have not shown a basis on which New Mexico may exercise its jurisdiction over Dana Corporation in this lawsuit.

■ It has been suggested that there are basically two principles by which corporate form may be disregarded for purposes of determining whether a parent corporation is amenable to service of process in the forum state by reason of acts within that state by a subsidiary corporation or other agent. *See* 2 *Moore's Federal Practice, supra ¶* 4.41–1[6], at 4–371 to –372. One is the principle of agency, *see, e.g., Allen,* 599 F.Supp. at 390, and the other requires such dominion and control that one corporation is the alter ego of the other, *see, e.g., Rollins Burdick Hunter, Inc. v. Alexander & Alexander Servs., Inc.,* 206 Cal.App.3d 1, 253 Cal.Rptr. 338, 342–43 (1988); *Scott v. AZL Resources, Inc.,* 107 N.M. 118, 121, 753 P.2d 897, 900 (1988) (discussing requirements for piercing the corporate veil as including a showing of instrumentality or domination and improper purpose). These two principles may reflect the approach taken in *Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333, 336–37, 45 S.Ct. 250, 251–52, 69 L.Ed. 634 (1925) (in determining whether parent and subsidiary are separate entities for purposes of jurisdiction, the question is whether parent and subsidiary are separate and distinct corporate entities). That is, the law of agency and the concept of piercing the corporate veil may have provided useful exceptions to the holding in *Cannon Manufacturing Co.* and allowed a court to determine that a parent and its subsidiary were not truly separate. In this case, Plaintiffs failed to produce evidence sufficient to rebut Dana Corporation's prima facie showing of separateness, and thus neither of these principles is applicable.

■ Another, newer jurisdictional basis over a foreign corporation has been characterized as a "corporate theory," de facto merger, or continuation of the corporate entity theory. *See Fehl v. S.W.C. Corp.,* 433 F.Supp. 939, 944 (D.Del.1977).

Certain principles of substantive law with respect to the assumption by successor corporations of products liability are relevant to this jurisdictional question.... Common to the scope of both jurisdiction and liability is the fairness of making a corporation which enjoys the benefit of

business within the state answerable in that jurisdiction for wrongdoing associated with that business.

*Id.* at 945. Under this theory, jurisdiction would be based on Dana Corporation's acquisition of Wilson Manufacturing's assets and liabilities and on its contacts with New Mexico. *See Johnston v. Pneumo Corp.,* 652 F.Supp. 1402, 1405 (S.D.Miss.1987). Even under the corporate theory, however, contacts with a forum state are not attributed or imputed to a successor corporation solely through acquisition of assets and liabilities, *Johnston,* 652 F.Supp. at 1405, although there are differences in the application of this theory, *see City of Richmond,* 918 F.2d at 454–55. In connection with establishing liability, for example, it has been said: " 'The test is not the continuation of the business operation, but the continuation of the corporate entity.' " *See Goucher v. Parmac, Inc.,* 694 P.2d 953, 954 (Okla.Ct.App.1984), *cert. denied* (January 23, 1985) (quoting *Pulis v. United States Elec. Tool Co.,* 561 P.2d 68, 71 (Okla.1977)). Plaintiffs have not shown that under existing case law the corporate theory would support New Mexico's assertion of personal jurisdiction over Dana Corporation. *See Johnston,* 652 F.Supp. at 1406; *Fehl,* 433 F.Supp. at 947.

██ Plaintiffs also argue that New Mexico has personal jurisdiction over the manufacturer of the well servicing unit in question under "whatever entity name the rig was manufactured" because the rig in question was sold for use in New Mexico. They assert that when a manufacturer voluntarily chooses to sell his product so it will be resold from dealer to dealer, he cannot reasonably claim surprise at being held to answer in any state for damage the product causes, *Blount v. T D Publishing Corp.,* 77 N.M. 384, 390, 423 P.2d 421, 425 (1966), and that jurisdiction should attach to *any* successor corporation. This argument is closely related to the argument that we may disregard the corporate structure. That is, both arguments ask us to expand the reach of New Mexico's jurisdiction beyond existing case law as a matter of sound public policy. For the following reasons, we may not.

██ "A state has power to exercise judicial jurisdiction over a foreign corporation ... where the foreign corporation has such a relationship to the state that it is reasonable for the state to exercise such jurisdiction." 1 *Restatement (Second) of Conflict of Laws* § 52 (1971). Our understanding of what is reasonable in this context has greatly expanded since *Cannon Manufacturing Co.* was decided. As our Supreme Court noted over thirty years ago, "[a] more liberal policy has grown up over the years with respect to what affords due process as to a foreign corporation doing business in another state than that of its creation." *State ex rel. Grinnell Co. v. MacPherson,* 62 N.M. 308, 315, 309 P.2d 981, 986, *cert. denied,* 355 U.S. 825, 78 S.Ct. 32, 2 L.Ed.2d 39 (1957). The touchstone is whether there have been "sufficient minimum contacts," *Sanchez v. Church of Scientology,* 115 N.M. 660, 664, 857 P.2d 771, 775 (1993), determined by purposeful activity. "The purposeful, activity requirement assumes that a defendant will not be subject to jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.*

Plaintiffs have not shown sufficient minimum contacts to satisfy Dana Corporation's right to due process. Not only was the successor subsidiary dissolved prior to the cause of action arising, but also the predecessor company in effect was sold, in conjunction with the dissolution, to another company. We recognize that Plaintiffs are in a difficult position, one not infrequently confronted by plaintiffs injured by products many years after the maker of the product has sold it into interstate commerce. *See generally* Janet B. Fierman, Note, *Assumption of Products Liability in Corporate Acquisitions,* 55 B.U.L.Rev. 86 (1975). "When the manufacturer of a defective product has been acquired by another business prior to an individual's injury and the manufacturer has dissolved, a question arises as to whether the successor business can be held liable for the torts of its predecessor." *Id.* at 86. This creates a conflict in the policies underlying various relevant legal principles.

Under strict products liability law, a manufacturer is liable for the harm caused

to persons injured by any defective or dangerous products it has sold. In most jurisdictions today, a plaintiff's cause of action accrues at the time of injury regardless of the time the defective product left the manufacturer's control. If, between the time of the sale of the product to the plaintiff and the time of the plaintiff's injury, the manufacturer has sold its assets to another business and has dissolved, the plaintiff may try to attach the manufacturer's liability to the successor corporation. A number of products liability policies favor a general rule of imposition of liability on successor corporations. A successor corporation may have more resources than an injured user; generally, it has responsibility for improving the product and has benefitted from past sales. Yet, a number of corporate law policies favor a general rule of nonimposition of liability on successor corporations. A successor corporation, for planning and insurance purposes, needs to know the extent of liability assumed.

Fierman, *supra,* at 110.

Dana Corporation had no reason to anticipate defending a lawsuit more than three years later in New Mexico. The initial acquisition of Wilson Manufacturing appears to have been an investment for a limited time and purpose. Dana Corporation had no significant opportunity either to improve the product or benefit from past sales. Thus, we think the policies behind successor liability are outweighed by the corporate law policies against imposition of liability.

■ Plaintiffs also argue that Dana Corporation "by assuming the corporate name 'Wilson Manufacturing Co., a subsidiary of Dana Corporation', is jointly and severally liable for any liabilities incurred or arising as a result of doing business as Wilson Manufacturing Co. by reason of Section 53–18–9 N.M.S.A. 1978." However, that statute provides that one who holds himself out as a corporation is personally liable for his acts if, in fact, there is no corporation: "All persons who assume to act as a corporation without authority to do so are jointly and severally

liable for all debts and liabilities incurred or arising as a result thereof." Section 53–18–9. Section 53–18–9 does not provide any basis for finding personal jurisdiction over Dana Corporation.

■ Section 53–18–9 is based on Section 146 of the Model Business Corporations Act and is intended to abolish the doctrine of de facto corporations. *See T–K Distribs., Inc. v. Soldevere,* 146 Ariz. 150, 704 P.2d 280, 282 (Ct.App.1985) (recognizing that the adoption of Section 146 abolished de facto corporations); *Timberline Equip. Co. v. Davenport,* 267 Or. 64, 514 P.2d 1109, 1110–11 (1973) (en banc) (comparing Oregon law and noting that the comment to Section 146 indicates the section was intended to negate the doctrine of de facto incorporation).

Finally, Plaintiffs argue that this Court should apply the equitable trust theory, otherwise known as the trust fund doctrine. Prior to the enactment of dissolution statutes, the equitable trust theory was created to provide some relief to creditors of dissolved corporations. *See* George I. Wallach, *Products Liability: A Remedy in Search of a Defendant—The Effect of a Sale of Assets and Subsequent Dissolution on Product Dissatisfaction Claims,* 41 Mo.L.Rev. 321, 328 (1976). The theory allowed creditors of a dissolved corporation to look to a third party who had received the assets of the corporation to satisfy their claim so long as the assets were traceable and had not been acquired by a bona fide purchaser. *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 550 (Tex.1981). Now, however, the adoption of corporate dissolution statutes has supplanted the equitable trust theory in most jurisdictions. *See id.* Recently the New Mexico Supreme Court specifically declined to join the minority of jurisdictions in adopting that theory. *Smith v. Cox,* 113 N.M. 682, 684, 831 P.2d 981, 983 (1992).

*CONCLUSION*

Wilson–Wichita was properly dismissed from this suit because the Delaware dissolution statute controls and more than three years have passed since Wilson–Wichita's

dissolution. The same rationale applies to the dismissal of Wilson Manufacturing, which had merged into Wilson–Wichita. Dana Corporation was also properly dismissed because New Mexico courts lack personal jurisdiction. The district court's decision is affirmed.

IT IS SO ORDERED.

ALARID and BLACK, JJ., concur.