FOURTH DIVISION
 FILED: 11/14/96

No. 1-95-2533

BROWN LEASING, INC., f/k/a CAPITOL ) APPEAL FROM THE
LEASING COMPANY, ) CIRCUIT COURT OF
 ) COOK COUNTY
 Plaintiff-Appellant, ) 

 )
 v. )
 )
ERROL STONE, JAMES E. WELLS, ALEX M. )
VERCILLO, GERALD J. DeNICHOLAS, MYRON )
P. ALCOCK, ROBERT BURSTEIN, MICHAEL V. )
CARELLI, PAUL V. CARELLI III, CAROL ANN )
CARELLI, ROBERT G. CUNNINGHAM, FRED R. )
EISEMAN III, MARY ANN KIRCHSCHLAGER, )
ROBERT NAGY, RICHARD ROSENOW, JAMES S. )
STEFO, MARIE WELLS, ANTONIO GUILLEN, )
SUSAN KASTNER, RICHARD M. RANDICK, DON )
DYBUS, JEROME A. COSENTINO, CARELLI )
FAMILY TRUST, a Trust under the laws of )
the State of Illinois, and COSMOPOLITAN )
BANCORP, INC., an Illinois Corporation, )
 ) 
 Defendants-Appellees, )
 )
 and )
 )
MICHAEL HIGH, Sr., CHARLES E. ROBBINS, )
DENNIS POLK, and DONNELLY A. DYBUS, )
LTD., a Professional Corporation, ) HONORABLE
 ) PATRICK McGANN,
 Defendants. ) JUDGE PRESIDING.

 PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:
 The plaintiff, Brown Leasing Inc., filed the instant appeal
seeking the reversal of two orders of the circuit court which
dismissed a number of counts contained in its original complaint
and denied the plaintiff leave to file its proposed first amended
complaint. We have also taken two procedural motions filed by the
parties for consideration along with the substantive issues raised
on appeal. For the reasons which follow, we (1) deny the motion to
dismiss this appeal filed by the defendant, Gerald J. DeNicholas;
(2) deny the plaintiff's motion to strike portions of DeNicholas'
brief; (3) affirm the trial court, in part; (4) reverse the trial
court, in part; and (5) remand this case to the circuit court for
further proceedings consistent with the opinions expressed herein. 
Due, however, to the page limitations imposed on our published
opinions by Supreme Court Rule 23 (Official Reports Advance Sheet
No. 15 (July 20, 1994, R. 23, eff. July 1, 1994), the only portions
of our analysis that will be published relate to DeNicholas' motion
to dismiss and the propriety of the trial court's ruling denying
the plaintiff leave to file one of the breach of warranty of
authority claims contained in its proposed first amended complaint.
 Prior to setting forth our legal analysis, it is necessary
that we place this case in both its procedural and factual context.

 The plaintiff filed the instant action against 27 individual
and corporate defendants seeking to recover damages for losses
incurred in connection with a $1,950,000 loan that the plaintiff
made to defendant Jerome Cosentino. In its original complaint, the
plaintiff sought recovery against the former officers and directors
of the Cosmopolitan National Bank of Chicago (Bank); the Bank's
parent company, Cosmopolitan Bancorp, Inc. (Bancorp); Bancorp's
officers, directors and shareholders; and several other
individuals, including Cosentino. For ease of analysis, we will
group a number of these defendants and refer to them by collective
descriptions. Because of their relationship to the Bank and
Bancorp, some of the defendants will be included within several
descriptive groupings; however, unless indicated otherwise, our
resolution of issues relating to each descriptive group is a
resolution of the issues as to each member of the group, but only
in the capacity he or she shares in common with other members of
that group. 
 When we refer to the "Bank's Directors," we are referring to
the following defendants in their capacity as former directors of
the Bank: Errol L. Stone, James Wells (Wells), Alex M. Vercillo,
Gerald J. DeNicholas, Myron P. Alcock, Robert Burstein, Michael V.
Carelli (Carelli), Paul V. Carelli III, Robert G. Cunningham, Fred
R. Eiseman III, Mary Anne Kirchschlager, Robert Nagy, Richard C.
Rosenow, and James S. Stefo. "Outside Directors" is a designation
given to a sub-group of the Bank's Directors which includes: Stone,
Alcock, Burstein, Carelli, Carelli III, Cunningham, Eiseman,
Kirchschlager, Nagy, Rosenow, and Stefo. Our references to
"Bancorp's Directors" includes the following individuals in their
capacity as directors of Bancorp: Stone, Wells, Vercillo,
DeNicholas, Alcock, Burstein, Carelli, Carelli III, Cunningham,
Eiseman, Kirchschlager, Nagy, Rosenow, and Stefo. "Shareholders"
refers to the following defendants in their capacity as
shareholders of Bancorp: Stone, Wells, Vercillo, DeNicholas,
Alcock, Burstein, Carelli, Carelli III, Carol Ann Carelli,
Cunningham, Eiseman, Kirchschlager, Nagy, Rosenow, Stefo, Marie
Wells, and the Carelli Family Trust (Trust). 
 The plaintiff's original complaint, although divided into
counts, was based upon a core of operative allegations applicable
to each theory of recovery pled. The following facts, which we
must take as true for the purpose of our analysis (Miner v.
Gillette Co., 87 Ill. 2d 7, 428 N.E.2d 478 (1981)), were alleged in
that complaint. 
 At all times relevant, the Bank was a federal banking agency. 
The Bank's common stock was owned entirely by Bancorp, an Illinois
corporation. Cosentino, then the Illinois State Treasurer, and two
companies of which he was the principal shareholder, Fast Motor
Service, Inc. (Fast Motor) and U. S. International, Inc. (USI),
were customers of the Bank. The plaintiff, then known as Capitol
Leasing, Inc., was one of the Bank's largest customers.
 From June 1988 through May 31, 1989, Cosentino engaged in a
check kiting scheme whereby reciprocal checks were circulated
between a USI account at the Bank and a Fast Motor account at Cole
Taylor Drovers Bank (Drovers). Although Cosentino knew that insuf-
ficient funds were on deposit in either account to cover the
reciprocal checks drawn on them, he initiated the scheme to create
apparent positive balances in both accounts, thereby concealing
large overdrafts that existed in both accounts. By the end of
1988, the Bank's Directors were aware of substantial overdrafts in
USI's account at the Bank written against deposits of checks drawn
on Fast Motor's account at Drovers.
 In or around May 1989, Drovers advised the Bank that it would
no longer accept USI checks drawn on the Bank to cover overdrafts
in Fast Motor's account at Drovers. In order to cover a
substantial overdraft in Fast Motor's account, the Bank wire
transferred $1,300,000 to Drovers on or about May 31, 1989,
resulting in a $1,536,295 negative balance in USI's account at the
Bank on that day. In addition to the overdrafts in USI's account,
Fast Motor owed the Bank over $250,000 as a result of loans.
 DeNicholas and Vercillo asked Terry Brown, the plaintiff's
president and principal shareholder, to make a $1,950,000 loan from
the plaintiff to Cosentino as an accommodation to the Bank that
would enable Cosentino to pay off $1,950,000 in overdrafts. 
DeNicholas and Vercillo told Terry Brown that Cosentino, Fast
Motor, and USI were sound credit risks, and that the loan would be
repaid by the end of 1989 from the proceeds of a Small Business
Administration (SBA) loan that Cosentino had applied for on behalf
of Fast Motor. As further inducement, DeNicholas and Vercillo
represented that the loan would be guaranteed by the Bank and co-
signed by its chairman, Wells. They also told Terry Brown that the
Bank could not make the loan to Cosentino because, if it did,
Cosentino's aggregate borrowings from the Bank would exceed federal
regulatory lending limits to a single borrower. 
 Terry Brown agreed to allow the plaintiff to make the
requested loan to Cosentino. The following events then occurred on
June 29 and 30, 1989. DeNicholas and Vercillo delivered to the
plaintiff an unsecured note for $1,950,000 dated June 29, 1989,
which was signed by Cosentino as the maker and co-signed by Wells. 
Accompanying the note was a "Standby Letter of Guarantee" dated
June 29, 1989, which was typed on Bancorp stationary and executed
by DeNicholas and Vercillo as president and vice-president,
respectively. The Standby Letter of Guarantee obligated the
"issuer" to buy back the Cosentino note in the event of a default. 
For its part, the plaintiff delivered to DeNicholas and Vercillo a
check for $1,950,000 payable to Cosentino "and/or" Wells. After
the exchange of the plaintiff's check for the note and the Standby
Letter of Guarantee, DeNicholas and Vercillo delivered the check to
Wells who endorsed it and deposited it to USI's account at the
Bank. This deposit cleared the overdrafts then existing in USI's
account. 
 In April 1990, DeNicholas and Vercillo requested that the
plaintiff restructure the Cosentino loan. They represented to
Terry Brown that Cosentino, then a candidate for Illinois Secretary
of State, wanted Wells removed as a co-signor of the note because
Wells was being investigated by federal authorities. Thereafter,
Terry Brown met with DeNicholas, Vercillo, Richard M. Randick, and
Don Dybus to discuss the restructuring request. These defendants
proposed that the plaintiff cancel Cosentino's original note in
exchange for new notes executed by Cosentino, High, Robbins, and
Polk. DeNicholas and Vercillo provided the plaintiff with personal
financial statements for High, Robbins, and Polk. 
 On April 19, 1990, the plaintiff cancelled Cosentino's
original note in exchange for the following: a $1,000,000 note
dated April 19, 1990, signed by Cosentino and guaranteed by High;
a $450,000 note dated April 19, 1990, signed by Cosentino; a
$250,000 note dated April 19, 1990, signed by Robbins; and, a
$250,000 note dated April 19, 1990, signed by Polk. Additionally,
DeNicholas and Vercillo orally represented to Terry Brown that the
Standby Letter of Guarantee applied to the restructured loan and
that the Bank continued to be obligated thereon. 
 The notes executed by Cosentino, Robbins, and Polk fell into
default. Thereafter, in December 1990, the plaintiff made demand
on the Bank to buy back the notes pursuant to the Standby Letter of
Guarantee. The Bank, through DeNicholas and Vercillo, refused to
honor the demand. 
 On May 17, 1991, the Bank was closed by order of the Comp-
troller of the Currency and placed in receivership with the Federal
Deposit Insurance Corporation (FDIC). 
 On June 3, 1992, DeNicholas and Vercillo pled guilty to
criminal charges stemming, in part, from their execution of the
Standby Letter of Guarantee without having obtained authorization
from either the Bank's Directors or Bancorp's Directors. 
 The notes held by the plaintiff were never repaid, prompting
the initiation of this action. The plaintiff's original complaint
was divided into 14 counts, styled: "Count I - Negligent Mis-
representation" against the Bank's Directors; "Count II - Fraud"
against Vercillo, DeNicholas, Wells, Carelli III, Cosentino,
Richard M. Randick, and Don Dybus; "Count III - Unjust Enrichment"
against the Bank's Directors; "Count IV - Constructive Fraud"
against the Bank's Directors; "Count V - Breach of Fiduciary
Duties" against the Bank's Directors; "Count VI - Negligence"
against the Bank's Directors; "Count VII - Conversion" against the
Bank's Directors and the Bank's Officers; "Count VIII - Breach of
Promissory Note" against Cosentino; Count IX - Breach of Promissory
Note" against Charles E. Robbins; "Count X - Breach of Promissory
Note" against Dennis Polk; "Count XI - Breach of Guaranty" against
Michael High, Sr.; "Count XII - Breach of Guaranty" against
Bancorp; "Count XIII - Breach of Guaranty" against the
Shareholders; and "Count XIV - Breach of Warranty of Authority and
Violation of Ill. Rev. Stat. ch 32, 3.20" against DeNicholas and
Vercillo. 
 Pursuant to motions filed by the defendants under sections 2-
615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-
615, 2-619 (West 1994)), the trial court entered a memorandum
opinion and order on November 18, 1994, dismissing, "with
prejudice": count I, the plaintiff's negligent misrepresentation
claim, as against all of the Bank's Directors except Vercillo;
count II, the plaintiff's fraud claim, as against each of the
defendants except Vercillo; counts III, IV, V, VI, VII and XIII,
the plaintiff's claims for unjust enrichment, constructive fraud,
breach of fiduciary duties, negligence, conversion and breach of
guaranty against the Shareholders, respectively, in their entirety. 
The court also dismissed count XII, the plaintiff's breach of
guaranty claim against Bancorp, along with count XIV, the
plaintiff's statutory breach of warranty of authority claim, but
granted the plaintiff leave to amend both counts. In that same
order, the trial court partially granted the plaintiff's pending
summary judgment motion on the issue of liability against Cosentino
for breach of his promissory note as pled in count VIII of the
plaintiff's complaint, and denied the plaintiff's motions for
summary judgment against Robbins and Polk for breach of their
promissory notes as pled in counts IX and X, respectively. The
court entered no order relating to count XI of the plaintiff's com-
plaint as High did not move for its dismissal. 
 The plaintiff moved the court to reconsider its order of
November 18 and sought leave to file its proposed first amended
complaint. The plaintiff's proposed first amended complaint
addressed a number of the deficiencies noted by the court in its
November 18 order, deleted the conversion claim against the Bank's
Directors, and sought to add counts alleging that the Bank's Direc-
tors, along with Cosentino, Robbins, Polk, High, Randick and Dybus,
engaged in a scheme to defraud, and that the Bank's Directors,
Bancorp's Directors, and the Shareholders had breached their war-
ranty of authority. The proposed first amended complaint,
predicated upon essentially the same operative facts set forth in
the plaintiff's original complaint, was also divided into 14
counts, namely: "Count I - Scheme to Defraud" against the Bank's
Directors, Cosentino, Robbins, Polk, High, Randick, and Dybus;
"Count II - Negligent Misrepresentation" against the Bank's
Directors; "Count III - Fraud" against Vercillo, DeNicholas, Wells,
Polk, Robbins, High, Randick, and Dybus; "Count IV - Unjust
Enrichment" against the Bank's Directors; "Count V - Constructive
Fraud" against the Bank's Directors; "Count VI - Breach of
Fiduciary Duties" against the Bank's Directors; "Count VII -
Negligence" against the Bank's Directors; "Count VIII - Breach of
Promissory Note" against Robbins; "Count IX - Breach of Promissory
Note" against Polk; "Count X - Breach of Guaranty" against High;
"Count XI - Breach of Guaranty" against Bancorp; "Count XII -
Breach of Guaranty" against the Shareholders; "Count XIII - Breach
of Warranty of Authority and Violation of Ill. Rev. Stat. ch 32,
3.20" against the Bank's Directors, Bancorp's Directors, and the
Shareholders; and, "Count XIV - Breach of Warranty of Authority and
Violation of Ill. Rev. Stat. ch 32, 3.20" against DeNicholas and
Vercillo. 
 On June 12, 1995, the trial court issued a memorandum opinion
and order on the plaintiff's motion to reconsider and for leave to
file its proposed first amended complaint. On the request for
reconsideration, the court granted the plaintiff a period of 28
days to file an amended complaint raising negligent misrepresen-
tation and fraud claims against DeNicholas as pled in counts I and
II, respectively, of the plaintiff's original complaint. The trial
court denied the plaintiff's motion for leave to file its 14 count
proposed first amended complaint. The court did, however, grant the
plaintiff a period of 28 days to file two amended fraud claims
against Vercillo, DeNicholas, Polk, Robbins, High, Randick, and
Dybus; an amended statutory breach of warranty of authority claim
against Vercillo and DeNicholas; and an amended claim alleging a
scheme to defraud or civil conspiracy against Wells, Polk, Robbins,
High, Randick, and Dybus. The order provided that, except as to
the specific amended claims that the plaintiff was granted leave to
file against Vercillo, DeNicholas, Wells, Polk, Robbins, High,
Randick, and Dybus, the plaintiff was denied leave to file an
amended complaint against the other defendants and, further, that
the other defendants were dismissed from the action "with preju-
dice." The trial court also found in the June 12 order that "[n]o
just reason exists to delay [its] enforcement or appeal." 
Thereafter, on July 12, 1995, the trial court entered an order
clarifying its June 12 order specifically setting forth the amended
pleadings which could be filed by the plaintiff and against whom
those pleadings could be filed. Also on July 12, 1995, the plain-
tiff filed the instant appeal from the trial court's orders of
November 18, 1994, and June 12, 1995. 
 On August 7, 1995, with prior leave of the trial court, the
plaintiff filed its "Second Amended Complaint" in this action. 
That complaint, which is not the subject of this appeal, is divided
into eight counts, namely: "Count I - Scheme to Defraud/Civil
Conspiracy" against Wells, Robbins, Polk, High, Randick, and Dybus;
"Count II - Negligent Misrepresentation" against DeNicholas and
Vercillo; "Count III - Fraud" against DeNicholas and Vercillo;
"Count IV - Fraud" against DeNicholas, Vercillo, Robbins, Polk,
High, Randick, and Dybus; "Count V - Breach of Promissory Note"
against Robbins; "Count VI - Breach of Promissory Note" against
Polk; "Count VII - Breach of Guaranty" against High; and, "Count
VII (sic) - Breach of Warranty of Authority and Violation of Ill.
Rev. Stat. ch. 32, 3.20" against DeNicholas and Vercillo. 
 DeNicholas filed a motion to dismiss this appeal, arguing that
by filing its "Second Amended Complaint," the plaintiff waived the
right to appeal from the trial court's orders dismissing portions
of its original complaint and denying it leave to file its proposed
first amended complaint. We took this motion for disposition with
the case. 
 For its part, the plaintiff has moved to strike portions of
DeNicholas' brief, contending that he improperly seeks an advisory
opinion from this court on an issue still pending before the trial
court. We also took the plaintiff's motion for disposition with
the case. Before addressing the issues as framed by the plaintiff,
we will dispose of DeNicholas' motion to dismiss. 
 In support of his motion, DeNicholas asserts that by filing
its "Second Amended Complaint" and failing to incorporate the
counts of its original complaint that were dismissed "with
prejudice" on November 18, 1994, and the counts of its proposed
first amended complaint which the trial court denied leave to file
on June 12, 1995, the plaintiff waived the right to seek appellate
review of either order. See Foxcraft Townhome Owners Assn. v.
Hoffman Rosner Corp., 96 Ill. 2d 150, 449 N.E.2d 125 (1983); Du
Page Aviation Corp. v. Du Page Airport Authority, 229 Ill. App. 3d
793, 594 N.E.2d 1334 (1992). 
 The plaintiff argues that application of the waiver doctrine
to the facts of this case would be inconsistent with both Illinois
Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) and the
directions of the trial court when it issued its June 12 order. We
agree. 
 We have no quarrel with the general proposition that "a party
who files an amended pleading waives any objection to the trial
court's ruling on the former complaints." Foxcraft Townhome Owners
Assn., 96 Ill. 2d at 153. However, none of the cases cited by
DeNicholas in support of his motion to dismiss involve a situation
where the amended pleading was filed after the plaintiff had
perfected an appeal from an order dismissing fewer than all of the
claims in its prior complaint. Nothing in the filing of the
plaintiff's "Second Amended Complaint" in this case after it had
perfected its appeal from the trial court's orders of November 18
and June 12 evinces any intention on the part of the plaintiff to
abandon the claims pled in the dismissed counts. In point of fact,
once the plaintiff filed its notice of appeal in this case, the
trial court lacked jurisdiction to permit the filing of any amended
pleading which might moot this appeal. Once the jurisdiction of
the appellate court attaches, the trial court retains jurisdiction
of a case to hear and determine only those matters which are
independent of and unrelated to that portion of the proceedings
that pends on appeal. Home Savings & Loan Association v. Samuel T.
Isaac & Associates, Inc., 99 Ill. App. 3d 795, 425 N.E.2d 985
(1981). In this case, the plaintiff perfected its appeal pursuant
to Rule 304(a), thus removing from the jurisdiction of the trial
court all matters relating to the claims which are the subject of
this appeal. The trial court did, however, retain jurisdiction to
allow the filing of amended pleadings limited to claims which raise
issues independent of the issues before us. Consequently, we find
that the filing of the plaintiff's "Second Amended Complaint" did
not act as a waiver of the plaintiff's right to pursue this appeal,
and we deny DeNicholas' motion to dismiss.
 We will next address the substantive issues presented for
review on the plaintiff's appeal. Because the trial court
dismissed a number of counts in the plaintiff's original complaint
in response to motions to dismiss brought pursuant to section 2-615
of the Code, one of the questions to be resolved by this court is
whether the dismissed counts state causes of action upon which
relief could be granted. Burdinie v. Village of Glendale Heights,
139 Ill. 2d 501, 565 N.E.2d 654 (1990), overruled on other grounds
in McCuen v. Peoria Park District, 163 Ill. 2d 125, 643 N.E.2d 778
(1994); Janes v. First Federal Savings & Loan Association, 57 Ill.
2d 398, 312 N.E.2d 605 (1974). The issue is one of law and our
review is de novo. Metrick v. Chatz, 266 Ill. App. 3d 649, 639
N.E.2d 198 (1994). Additionally, we must determine if the trial
court abused its discretion in refusing to grant the plaintiff
leave to file its proposed first amended complaint. See Loyola
Academy v. S&S Roof Maintenance, Inc., 146 Ill. 2d 263, 586 N.E.2d
1211 (1992). 
 In resolving these issues, we must take all well-pleaded facts
in the plaintiff's original and proposed first amended complaints
as true and draw all reasonable inferences from those facts which
are favorable to the plaintiff. Ziemba v. Mierzwa, 142 Ill. 2d 42,
566 N.E.2d 1365 (1991). However, conclusions of law or fact
contained in the pleadings will not be taken as true unless
supported by specific factual allegations. Ziemba, 142 Ill. 2d at
47.
 Even in cases where an original complaint is arguably
deficient and subject to being stricken, error occurs if a trial
court abuses its discretion in denying the plaintiff leave to
amend. Bowe v. Abbott Laboratories, Inc., 240 Ill. App. 3d 382,
608 N.E.2d 223 (1992). If a plaintiff can state a cause of action
by amending its complaint, a dismissal with prejudice on the
pleadings should not be granted. Bowe, 240 Ill. App. 3d at 389. 
 Our analysis of the substantive issues presented in this
appeal has been made extremely difficult due to the manner in which
the plaintiff chose to plead its original and proposed first
amended complaints. The plaintiff's original complaint contains 83
paragraphs of allegations presumptively common to all counts. The
plaintiff then set forth its various claims, divided into 14 counts
each of which not only incorporates the 83 paragraphs of common
allegations and sets forth additional allegations necessary to
state the claims asserted, but also incorporates all of the
allegations set forth in each preceding count. This pleading style
results in every count from II through XIV containing not only
multiple causes of action, but also numerous extraneous allegations
wholly irrelevant to the specific cause of action being pled. The
same observation is true of the plaintiff's proposed first amended
complaint which was made even more prolix by the plaintiff's
inclusion of 111 paragraphs of allegations common to all counts. 
These complaints are the antithesis of the plain and concise
statement of the plaintiff's causes of action as mandated by
section 2-603(a) of the Code. 735 ILCS 5/2-603(a) (West 1994). 
Nonpublishable material omitted under Supreme Court Rule 23.
 F. Breach of Warranty of Authority.
 In its original complaint, the plaintiff pled an action
against DeNicholas and Vercillo in count XIV captioned "Breach of
Warranty of Authority and Violation of Ill. Rev. Stat. ch. 32,
3.20." The gist of the count was that, in executing the Standby
Letter of Guarantee without authority from the directors of Bancorp
or the Bank, DeNicholas and Vercillo became personally liable
thereon. The trial court denied a motion to dismiss this count on
November 18, 1994. A similar claim now pends in the circuit court
as the second numbered count VII of the plaintiff's second amended
complaint. 
 Count XIII of the plaintiff's proposed first amended complaint
set forth a claim entitled "Breach of Warranty of Authority and
Violation of Ill. Rev. Stat. ch. 32, 3.20" and sought relief
against the Bank's Directors, Bancorp's Directors, and the
Shareholders. The plaintiff alleged that the named defendants are
personally liable on the Standby Letter of Guarantee as they
authorized its issuance without authority to do so. 
 Plaintiff claims that the trial court erred in denying it
leave to file count XIII of its proposed first amended complaint,
arguing that section 3.20 of the Illinois Business Corporation Act
of 1983 (the Act) (805 ILCS 5/3.20 (West 1994)) renders all persons
who exercise corporate powers without authority personally liable
for all debts and liabilities incurred or arising as a result
thereof. Both DeNicholas and the Outside Directors responded to
the plaintiff's arguments in separate briefs. The plaintiff has
moved to strike that portion of DeNicholas' brief which addresses
this issue contending that, in actuality, DeNicholas improperly
seeks an advisory opinion on a matter pending before the trial
court. We took this motion with the case, and will now dispose of
it before addressing the substantive issues relating to count XIII. 
 
 The plaintiff fixed the issues it chose to raise on appeal. 
Any defendant, including DeNicholas, having an interest in our
resolution of those issues had a right to file a responding brief. 
By virtue of his status as one of the defendants against whom
recovery was sought in count XIII of the plaintiff's proposed first
amended complaint, DeNicholas has standing to make any well-
grounded argument in support of the trial court's order denying the
plaintiff leave to file the count. The mere fact that DeNicholas'
argument that count XIII fails to state a cause of action as a
matter of law might also be applicable to a claim that still pends
against him in the trial court is of no moment. The plaintiff has
appealed from an order which denied it leave to file a specific
claim against a number of defendants, including DeNicholas, and
DeNicholas has a right to respond to the plaintiff's arguments in
that regard. Consequently, the plaintiff's motion to strike a
portion of DeNicholas' brief is denied. 
 The final issue for our consideration is the propriety of the
trial court's order denying the plaintiff leave to file count XIII
of its proposed first amended complaint. As near as we are able to
understand from the count in issue and the plaintiff's brief, the
plaintiff contends that the Standby Letter of Guarantee violated
the provisions of 12 U.S.C. 24 which prohibits a national bank
from guarantying the obligations of a third party. From that
premise and based upon the provisions of section 3.20 of the Act,
the plaintiff concludes the Bank's Directors, Bancorp's Directors,
and the Shareholders are personally liable on the instrument since,
by authorizing its issuance, they assumed to exercise corporate
powers without authority.
 Section 3.20 of the Act provides that:
 "All persons who assume to exercise corporate powers
 without authority to do so shall be jointly and severally
 liable for all debts and liabilities incurred or arising
 as a result thereof." 805 ILCS 5/3.20 (West 1994). 
 Our research fails to reveal any Illinois case where this provision
of the Act was construed to impose personal liability upon one
acting on behalf of a duly organized and existing corporate entity. 
The only circumstances in which this statute has been applied are
those where a defendant acted before incorporation or after a
corporation was dissolved. See H & H Press, Inc. v. Axelrod, 265
Ill. App. 3d 670, 638 N.E.2d 333 (1994); Richmond Wholesale Meat
Co. v. Hughes, 625 F. Supp. 584 (N.D.Ill. 1985). Further, as
DeNicholas points out in his brief, other jurisdictions with
statutes similar to section 3.20 impose personal liability only
upon those who act on behalf of a nonexistent corporation. See
e.g. DBA/Delaware Systems Corp. v. Greenfield, 636 A.2d 1318 (R.I.
1994); Micciche v. Billings, 727 P.2d 367 (Colo. 1986); American
Vending Services, Inc. v. Morse, 881 P.2d 917 (Utah App. 1994);
Smith V. Halliburton Co., 118 N.M. 179, 879 P.2d 1198 (1994); Blue
Profit Sharing Plan v. Terrazas, 166 Ariz. 111, 800 P.2d 977
(1990); Harry Rich Corp. v. Feinberg, 518 So.2d 377 (Fla. App. 3
Dist. 1987); Company Stores Development Corp. v. Pottery Warehouse,
Inc., 733 S.W.2d 886 (Tenn App. 1987); Robertson v. Levy, 197 A.2d
443 (D.C. App. 1964).
 Since both the Bank and Bancorp were existing corporations at
the time that the Standby Letter of Guarantee was executed, even
assuming that its issuance was ultra vires, the Bank's Directors,
Bancorp's Directors, and the Shareholders are not subject to
personal liability thereon under section 3.20 of the Act. 
 Further, to the extent that count XIII of the plaintiff's
proposed first amended complaint might be read as an attempt to
state a common law action for breach of the warranty of authority,
it fails as against all of the defendants except DeNicholas and
Vercillo as none of the other defendants are alleged to have
executed the Standby Letter of Guarantee. As to DeNicholas and
Vercillo, the count in this regard is wholly duplicative of the
claim pled by the plaintiff in count XIV of its original complaint
which still pends in the trial court as count VII of its second
amended complaint. Accordingly, we affirm the trial court's order
denying the plaintiff leave to file count XIII of its proposed
first amended complaint.
 The following is a summary of our disposition of the issues
before us. 
 We deny both DeNicholas' motion to dismiss and the plaintiff's
motion to strike a portion of DeNicholas' brief.
 We affirm the following trial court rulings: dismissal of
count I of the plaintiff's original complaint and denial of leave
to file count II of its proposed first amended complaint against
Wells, Stone, Alcock, Burstein, Carelli, Carelli III, Cunningham,
Eiseman, Kirchschlager, Nagy, Rosenow, and Stefo; dismissal of
count VI of the plaintiff's original complaint and denial of leave
to file count VII of its proposed first amended complaint; denial
of leave to file count I of the plaintiff's proposed first amended
complaint against Cosentino; dismissal of counts IV and V of the
plaintiff's original complaint and denial of leave to file counts
V and VI of its proposed first amended complaint; dismissal of
count XIII of the plaintiff's original complaint and denial of
leave to file count XII of its proposed first amended complaint;
and denial of leave to file count XIII of the plaintiff's proposed
first amended complaint. 
 We reverse the following trial court rulings: denial of leave
to file count I of the plaintiff's proposed first amended complaint
against Stone, Alcock, Burstein, Carelli, Carelli III, Cunningham,
Eiseman, Kirchschlager, Nagy, Rosenow, and Stefo; denial of leave
to file count III of the plaintiff's proposed first amended
complaint against Wells; dismissal of count III of the plaintiff's
original complaint and denial of leave to file count IV of its
proposed first amended complaint; and denial of leave to file count
XI of the plaintiff's proposed first amended complaint. 
 Based upon the foregoing, we remand this cause to the circuit
court for further proceedings.
 Affirmed in part and reversed in part; cause remanded.
 CAHILL and THEIS, JJ., concur.