### RICHMOND WHOLESALE MEAT CO., Plaintiff,

v.

**Robert HUGHES, Michael Weinberg, Sr., Warren Dominick (each sued individually and d/b/a Weinberg Bros. Foods, Inc.), and Weinberg Bros. Foods, Inc., a dissolved Illinois corporation, Defendants.**

### No. 84C10956.

United States District Court, N.D. Illinois, E.D.

Dec. 20, 1985.

John H. Ward, Antonow & Fink, Chicago, Ill., for plaintiff.

Robert D. Hughes, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Plaintiff, Richmond Wholesale Meat Co. ("Richmond"), brings this action against Defendants Weinberg Bros. Foods, Inc. ("Weinberg Bros."), Michael Weinberg, Sr. ("Weinberg"), Warren Dominick ("Dominick") and Robert Hughes ("Hughes") (collectively "Defendants"), in a three-count amended complaint (the "complaint"), alleging breach of contract, failure to pay the amount due on an account stated, and conversion of Richmond's property. We have jurisdiction pursuant to 28 U.S.C. § 1332.

Defendants Dominick and Hughes filed a motion for summary judgment on June 25, 1985. Richmond filed a cross-motion for summary judgment against Dominick on Counts II and III of the complaint, and also moved to strike Dominick's and Hughes' motion for summary judgment. In an order dated July 17, 1985, this court denied Richmond's motion to strike the motion of Dominick and Hughes. The briefing has since been completed and, accordingly, we now turn to the parties' cross-motions.

## Facts

Although the parties have presented the court with cross-motions for summary judgment, the facts are hotly disputed. As best we can discern, Richmond, a California corporation, is in the business of purchasing and selling meat and meat products. Richmond alleges that Weinberg Bros., an Illinois corporation, was, during the relevant time period, in the business of purchasing and selling various foods, including meat and eggs. Weinberg Bros., however, denies that it purchases or sells meat.

In March 1983, Dominick and Hughes purchased all of the outstanding stock in Weinberg Bros. Foods, Inc., with Dominick owning sixty percent of the stock. Dominick was elected vice president and treasurer of the company and also functioned as chairman of the board of directors. Dominick acts as the company's accountant. Hughes owns the other forty percent of the stock. Hughes is the secretary and also a director. In addition, he acts as the company's attorney. Both Dominick and Hughes deny that they took an active role in the management or operation of Weinberg Bros., contending that the company was run by the president, Weinberg, until he suffered a stroke in mid-1983. At that point, they state, Alex Chiagouris ("Chiagouris"), the controller, took over the management of Weinberg Bros.

In December 1983, Weinberg Bros. was dissolved by the Secretary of State of Illinois for failing to pay franchise taxes. Richmond alleges, with supporting affidavit, that Weinberg Bros.' registered agent received the bill for the franchise taxes, a subsequent warning from the Secretary of State that continued failure to pay would result in dissolution, and, finally, a notice of dissolution for failure to pay the tax. The affidavit further indicates that copies of these notices with explanatory cover letters were sent to Dominick by Morris Dyner, a partner of the registered agent for Weinberg Bros. Dominick denies having received any notice from the Secretary of State's office, and thereby denies any knowledge of the dissolution of the corporation. Dominick does admit that he knows of the requirement that franchise taxes be paid periodically, and that he failed to ask Chiagouris whether the taxes had been paid. Weinberg Bros. was reinstated on December 6, 1984 and has since filed for protection under the Bankruptcy Code.

After Weinberg Bros. was dissolved, Weinberg, Dominick, and Hughes continued to do business under the name Weinberg Bros. Foods, Inc. Richmond alleges that on September 5, 1984, while Weinberg Bros. was still dissolved, Richmond sold to Weinberg Bros., on a sale or return basis, 199,200 pounds of "Sioux Preme" Brand pork chitterlings, 109,020 pounds of "Star" Brand pork spareribs and 159,810 pounds of "Jimmy Dean" brand pork spareribs, tendering its invoices for the agreed upon price for each. Richmond further alleges that on October 10, 1984 Richmond repurchased from Weinberg Bros. some of the "Jimmy Dean" brand pork spareribs. Richmond contends that, despite its repeated demands, Defendants have refused to pay the amounts due under the invoices. Meanwhile, Weinberg Bros. pledged the meat to American National Bank & Trust Co. (the "Bank") to secure loans to Weinberg Bros. This action, Richmond alleges, was contrary to Richmond's beneficial ownership interest remaining in the meat. The Bank thereafter foreclosed on and sold the meat to pay Weinberg Bros.' indebtedness.

Dominick and Hughes present a completely different picture of the nature of the transaction. According to their deposition testimony and their answer to the request to admit, no sale between Richmond and Weinberg Bros. ever took place. Weinberg Bros. simply accepted a "transfer" of the products from Richmond. Similarly, they deny that Richmond "repurchased" the meat, contending instead that this too was merely a "transfer" completed at Richmond's request. They admit that Richmond was never paid, but argue that Richmond never expected payment. Rather, the transaction represented an ongoing practice between the two companies,

whereby Richmond would transfer products to Weinberg Bros. in the form of warehouse receipts so that Richmond could have a receivable on its books on which it could borrow. Weinberg would then take the negotiable warehouse receipts and borrow on them. In other words, Dominick and Hughes take the position that the two companies had a long-standing practice of double financing warehouse receipts, and Richmond suddenly decided to change that practice by demanding immediate payment. Hughes testified at his deposition that he explained to Richmond the consequences of its action, i.e., that Weinberg Bros. did not have the cash to pay off the loan, that the Bank was not going to give up the negotiable documents, and that if Richmond would not agree to continue the double financing arrangement, the Bank would undoubtedly take the collateral and sell it.

Richmond's motion for summary judgment is brought against Dominick individually. It relies on Ill.Rev.Stat. ch. 32, § 3.20 (1985), which permits a cause of action against persons who assume to exercise corporate powers without authority. The motion is directed only at Counts II and III, alleging failure to pay the amount owing under an account stated and conversion. Dominick's and Hughes' motion goes to all counts, and basically argues that the statute does not operate to permit a finding of liability as to either of them. For the reasons set forth below, both motions are denied.

### Discussion

We begin with a discussion of Dominick's and Hughes' motion. The thrust of their argument is that they cannot be held liable under § 3.20 because neither of them had any relationship with Richmond. Their position appears to be that because they did not personally enter into the arrangements with Richmond giving rise to this lawsuit, they do not come within the purview of the statute. They also insist that they had no knowledge of the dissolution.[1] Further-

more, they contend that there is no reason to assume that they should have known about it. In support of this argument, Dominick and Hughes submit affidavits indicating that prior to their purchase of Weinberg Bros.' stock in March 1983, they requested and received from the Secretary of State a letter indicating that the company was in good standing. Accordingly, they assert, they had no reason to suspect that the status of the company was any different at the end of 1983.

Richmond argues that Dominick and Hughes have construed the statute too narrowly. If the only persons who could be held liable under the statute were those who personally dealt with the plaintiff, then high level officers of a corporation could avoid liability simply by making sure that their subordinates performed the actual acts required to operate the corporation. Richmond urges that such a result would be unjust because it would make subordinates, who are generally not in a position to benefit from a corporation's illegal activities, personally liable for acting at the specific or general instructions of their superiors, while those superiors, who *are* in a position to benefit from such activities and who are also in a better position to know whether the corporation is duly incorporated, would not be liable under the statute.

Ill.Rev.Stat. ch. 32, § 3.20 is entitled: "Unauthorized assumption of corporate powers," and provides:

> All persons who assume to exercise corporate powers without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.

We have found no Illinois authority directly addressing this issue. Richmond refers us to *Steve's Equipment Service, Inc. v. Riebrandt*, 121 Ill.App.3d 66, 76 Ill.Dec. 612, 459 N.E.2d 21 (1984) and *In re Estate of Plepel*, 115 Ill.App.3d 803, 71 Ill.Dec. 365, 450 N.E.2d 1244 (1983); however, the defendant in both of those cases had had direct dealings with the plaintiff. In fact,

---

1. Richmond concedes that there is a disputed question of fact as to Hughes' knowledge. Therefore, their cross-motion is directed only against Dominick.

in *Plepel*, the court expressly found that there was nothing to indicate to the claimants that they were dealing with a corporation or that the parties ever intended anything other than that the claimants should look to the individual for payment. The rule laid down by these courts is that "[a]n officer of a corporation dissolved for nonpayment of franchise taxes, who enters into contracts on behalf of the corporation after dissolution, may be held personally liable under this statute." *Steve's Equipment*, 121 Ill.App.3d at 70, 76 Ill.Dec. 612, 459 N.E.2d 21. *See also Plepel*, 115 Ill. App.3d at 806, 71 Ill.Dec. 365, 450 N.E.2d 1244. Dominick's and Hughes' motion is based on the very fact that they did *not* enter into any contracts on behalf of the corporation. Accordingly, these cases do not govern this situation.

A review of the law in other jurisdictions reveals that several other states have statutes quite similar to § 3.20, and these statutes have been subject to a variety of interpretations. In *Futch v. Southern Stores, Inc.*, 380 So.2d 444, 446 (Fla.1979) for example, the court construed a Florida statute virtually identical to § 3.20 [2] to mean that directors, officers, and agents of a dissolved corporation cannot be held personally liable in the absence of a showing that the creditor relied upon individual assets of the persons acting as a corporation. However, a different appellate district in Florida rejected that interpretation, finding no support for it in the language of the statute. *Mobil Oil Corp. v. Thoss*, 385 So.2d 726, 727 (Fla.1980). *See also Moore v. Occupational Safety and Health Review Commission*, 591 F.2d 991, 994–995 (4th Cir.1979) (describing different interpretations in different jurisdictions).

In *Timberline Equipment Co. v. Davenport*, 267 Or. 64, 514 P.2d 1109 (1973), the Oregon Supreme Court interpreted the following provision of the Oregon Business Corporation Act:

> All persons who assume to act as a corporation without the authority of a certificate of incorporation issued by the Corporation Commissioner, shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.

The court found the language ambiguous, but concluded that:

> the category of "persons who assume to act as a corporation" does not include those whose only connection with the organization is as an investor. On the other hand, the restriction of liability to those who personally incurred the obligation sued upon cannot be based upon logic or the realities of business practice. When several people carry on the activities of a defectively organized corporation, chance frequently will dictate which of the several active principals directly incurs a certain obligation or whether an employee, rather than an active principal, personally incurs the obligation.
>
> We are of the opinion that the phrase "persons who assume to act as a corporation" should be interpreted to include those persons who have an investment in the organization and who actively participate in the policy and operational decisions of the organization. Liability should not necessarily be restricted to the person who personally incurred the obligation.

*Id.* 514 P.2d at 1114.

The language of the Oregon statute differs somewhat from § 3.20 in that the Oregon statute appears to address only the situation in which the individuals act as a corporation where the incorporation is defective, and not necessarily the situation in which individuals act as a corporation after that corporation is dissolved. Nonetheless, the court's reasoning as to the personal liability of the individuals carries over into this context as well, and it has been so held. In *Flanagan v. Jackson Wholesale Building Supply Co.*, 461 So.2d

---

**2.** Fla.Stat. § 607.397 (1977) provides:

All persons who assume to act as a corporation without authority to do so shall be jointly and severally liable for all debts and liabilities incurred or arising or as a result thereof.

761, 763 (Miss.1984), the court expressly adopted the *Timberline* court's interpretation of the phrase "persons who assume to act as a corporation" in construing Miss. Code Ann. § 79–3–285 (1972), which provides:

> All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.[3]

We think the logic of these holdings is inescapable, and we too adopt this construction of the statutory language. We further find that Hughes and Dominick both had an investment in Weinberg Bros., as they own all the stock, and that, despite their protestations to the contrary, they were actively involved in the management of the company. It appears that all checks required one of their signatures, as did all warehouse receipts endorsed over to the bank. Dominick also apparently had a great deal of contact with the Bank regarding the pledging of the meat as collateral for a loan. Such involvement by an individual while the corporation was dissolved was deemed sufficient to hold the defendant liable in *Timberline*, and we find such actions to be sufficient in this case. Thus, we find that Dominick and Hughes could be held personally liable under § 3.20.

Dominick and Hughes argue that even if § 3.20 is found to apply to them, they still cannot be held liable because they did not know of the corporation's dissolution, and had no reason to know of it. The argument raises an issue as to the scope of liability under the statute. The court in *Steve's Equipment Service, Inc. v. Riebrandt*, 121 Ill.App.3d 66, 70, 76 Ill.Dec. 612, 459 N.E.2d 21 (1984) addressed this issue in considering the predecessor to § 3.20 and found "the better rule to be that a person who enters a contract on behalf of an involuntarily dissolved corporation is only personally liable under section 150 of the Business Corporation Act ... when, at the time he enters the contract, he knows, or because of his position should know, of the dissolution."

Although our holding expands the potential for liability beyond that indicated by the court in *Steve's Equipment* to include persons other than those who actually enter into contracts on behalf of a dissolved corporation, we agree with that court's holding that some element of knowledge, whether actual or constructive, is required by the statute. (Indeed, our expansion of the potential liability makes this requirement all the more compelling.) The statute does not say "all persons who exercise corporate powers," it says "all persons who *assume* to exercise corporate powers." This to us implies a necessary element of knowledge or constructive knowledge.

Our finding does not result in summary judgment for Dominick and Hughes, however, because whether they knew or should have known of the corporation's dissolution is a disputed issue of material fact. Should all the evidence indicate that Dominick and Hughes were actively operating the corporation while it was dissolved, and did know or should have known of the dissolution, they might well be found personally liable to Richmond. Accordingly, their motion for summary judgment is denied.

Because of the disputed issue as to Dominick's knowledge, Richmond's cross-motion must also be denied. Although we have held that an individual need not personally have incurred the obligation to be held liable under § 3.20, we have also held that the defendant must know, or because of his position should know, of the corporation's dissolution. Dominick strenuously denies any knowledge of Weinberg Bros.' dissolution, and further argues that there is no reason to attribute knowledge to him. A motion for summary judgment is appropriate when there is no genuine issue as to any material fact. Fed.R.Civ.P. Rule 56(c). Because Dominick's knowledge of the dissolution is both material and disputed,

---

**3.** We do not see any difference of significance between language implicating "all persons who assume to act as a corporation" and "all persons who assume to exercise corporate powers."

Richmond's motion for summary judgment is denied.

In addition, we would deny Richmond's motion even if Dominick's knowledge were not in dispute because it is unclear at this point whether Richmond has established the corporation's liability. If Weinberg Bros. is not liable to Richmond, we need never reach the secondary question of personal liability.

■ Richmond's motion premises liability on an account stated theory and on a conversion theory. An account stated has been defined as an agreement between parties who have had previous transactions that the account representing these transactions is true, so that the balance is correct, together with a promise, express or implied, to pay the balance. *See Allied Wire Products, Inc. v. Marketing Techniques, Inc.*, 99 Ill.App.3d 29, 54 Ill.Dec. 385, 393, 424 N.E.2d 1288, 1296 (1981); *Atria v. Geist*, 64 Ill.App.3d 88, 21 Ill.Dec. 11, 15, 380 N.E.2d 1187, 1191 (1978); *Soft Water Service, Inc. v. M. Suson Enterprises, Inc.*, 39 Ill.App.3d 1035, 351 N.E.2d 264, 268 (1976). An account stated may not be made the instrument to create an original liability; the whole point of an account stated is that it merely determines the amount of the debt where liability previously existed. *See Allied Wire Products*, 54 Ill.Dec. at 393–94, 424 N.E.2d at 1296–97.

■ Defendants have consistently disputed their liability to Richmond. They contest Richmond's assertions that a sale ever took place and that Richmond was owed any money. Richmond points out that Hughes met with Richmond's counsel in a restaurant in December 1984 and admitted that Weinberg Bros. owed Richmond the money and that he would help to see that it was paid. Richmond contends that an account stated was then established. In light of the widely divergent views as to the nature of the transaction, we think such an approach is too formalistic. At Hughes' deposition, he conceded to making the extrajudicial admission, but indicated that he had learned a great deal about Richmond's ongoing practice with

Weinberg Bros. since then and was no longer certain that Weinberg Bros. owed Richmond any money. In our view, Hughes' admission is insufficient to overcome the dispute that pervades this entire lawsuit; i.e., whether the deal was in the nature of a sale, as argued by Richmond, or simply a bookkeeping transfer, as argued by Weinberg Bros. This dispute cannot be resolved on a motion for summary judgment, and therefore, Weinberg Bros.' underlying liability has not yet been established. Accordingly, Richmond's claim on an account stated theory cannot prevail on summary judgment.

■ Richmond's conversion claim has similar flaws. To state a claim for conversion, there must be an unauthorized assumption of the right to possession or ownership. *Dickson v. Riebling*, 30 Ill.App.3d 965, 333 N.E.2d 646, 648 (1975); *Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.*, 2 Ill.App.3d 978, 276 N.E.2d 89 (1971). We cannot tell whether there has been such an unauthorized assumption because it is unclear what the parties' respective ownership interests were after the "sale" or "transfer." Richmond refers to Dominick's deposition, in which he indicated that he thought Richmond retained a beneficial ownership interest in the meat and that Weinberg Bros. owed Richmond the money. Richmond makes much of the fact that Dominick is an accountant and has earned a J.D. degree. However, we do not feel bound by Dominick's legal conclusions as to which party had title to the meat. A review of the papers presented to us indicates that nobody is truly certain. Accordingly, summary judgment on Richmond's conversion claim is inappropriate.

### Conclusion

For all the foregoing reasons, the parties' cross-motions for summary judgment are denied.