BROWN LEASING, INC., f/k/a Capitol Leasing Company, Plaintiff-Appellant, v. ERROL STONE *et al.*, Defendants-Appellees (Michael High, Sr., *et al.*, Defendants).

First District (4th Division)   No. 1—95—2533

Opinion filed November 14, 1996.

O'Rourke & Griffin, of Chicago (Michael J. O'Rourke, Thomas Griffin, Kelly McCloskey, and Roseanne Loftus, of counsel), for appellant.

Deutsch, Levy & Engel, of Chicago (Stuart Berks, Phillip Zisook, and Phillip Schreiber, of counsel), for appellee Gerald J. DeNicholas.

Gesas, Pilati & Gesas, Ltd., of Chicago (Michael Gesas and Kenneth Fedinets, of counsel), for appellee Jerome A. Cosentino.

Sonnenschein, Nath & Rosenthal, of Chicago (Duane C. Quaini, John I. Grossbart, and David C. Layden, of counsel), for appellee Errol Stone.

Wolin & Rosen, Ltd., of Chicago (Jeffrey Schulman and Harold Rosen, of counsel), for appellees Myron P. Alcock, Richard Rosenow, and James S. Stefo.

Mayer, Brown & Platt, of Chicago (Franklin P. Auwarter and Charles F. Ragan, of counsel), for appellee Mary Ann Kirchschlager.

Schwartz & Freeman, of Chicago (William L. Sharp, Aaron E. Hoffman, and Brad S. Grayson, of counsel), for appellee Robert G. Cunningham.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Brown Leasing, Inc., filed the instant appeal seeking the reversal of two orders of the circuit court which dismissed a number of counts contained in its original complaint and denied the plaintiff leave to file its proposed first amended complaint. We have also taken two procedural motions filed by the parties for consideration along with the substantive issues raised on appeal. For the reasons that follow, we (1) deny the motion to dismiss this appeal filed by defendant Gerald J. DeNicholas; (2) deny the plaintiff's motion to strike portions of DeNicholas' brief; (3) affirm the trial court, in part; (4) reverse the trial court, in part; and (5) remand this case to the circuit court for further proceedings consistent with the opinions expressed herein. Due, however, to the page limitations imposed on our published opinions by Supreme Court Rule 23 (166 Ill. 2d R. 23), the only portions of our analysis that will be published relate to DeNicholas' motion to dismiss and the propriety of the trial court's ruling denying the plaintiff leave to file one of the breach of warranty of authority claims contained in its proposed first amended complaint.

Prior to setting forth our legal analysis, it is necessary that we place this case in both its procedural and factual context.

The plaintiff filed the instant action against 27 individual and corporate defendants seeking to recover damages for losses incurred in connection with a $1,950,000 loan that the plaintiff made to defendant Jerome Cosentino. In its original complaint, the plaintiff sought recovery against the former officers and directors of the Cosmopolitan National Bank of Chicago (Bank); the Bank's parent company, Cosmopolitan Bancorp, Inc. (Bancorp); Bancorp's officers, directors and shareholders; and several other individuals, including Cosentino. For ease of analysis, we will group a number of these defendants and refer to them by collective descriptions. Because of their relationship to the Bank and Bancorp, some of the defendants will be included within several descriptive groupings; however, unless indicated otherwise, our resolution of issues relating to each descriptive group is a resolution of the issues as to each member of the group, but only in the capacity he or she shares in common with other members of that group.

When we refer to the "Bank's Directors," we are referring to the following defendants in their capacity as former directors of the Bank: Errol L. Stone, James Wells (Wells), Alex M. Vercillo, Gerald J. DeNicholas, Myron P. Alcock, Robert Burstein, Michael V. Carelli (Carelli), Paul V. Carelli III, Robert G. Cunningham, Fred R. Eiseman III, Mary Anne Kirchschlager, Robert Nagy, Richard C. Rosenow, and James S. Stefo. "Outside Directors" is a designation given to a subgroup of the Bank's Directors which includes: Stone, Alcock, Burstein, Carelli, Carelli III, Cunningham, Eiseman, Kirchschlager, Nagy, Rosenow, and Stefo. Our references to "Bancorp's Directors" include the following individuals in their capacity as directors of Bancorp: Stone, Wells, Vercillo, DeNicholas, Alcock, Burstein, Carelli, Carelli III, Cunningham, Eiseman, Kirchschlager, Nagy, Rosenow, and Stefo. "Shareholders" refers to the following defendants in their capacity as shareholders of Bancorp: Stone, Wells, Vercillo, DeNicholas, Alcock, Burstein, Carelli, Carelli III, Carol Ann Carelli, Cunningham, Eiseman, Kirchschlager, Nagy, Rosenow, Stefo, Marie Wells, and the Carelli Family Trust (Trust).

The plaintiff's original complaint, although divided into counts, was based upon a core of operative allegations applicable to each theory of recovery pled. The following facts, which we must take as true for the purpose of our analysis (*Miner v. Gillette Co.*, 87 Ill. 2d 7, 428 N.E.2d 478 (1981)), were alleged in that complaint.

At all times relevant, the Bank was a federal banking agency. The Bank's common stock was owned entirely by Bancorp, an Illinois

corporation. Cosentino, then the Illinois State Treasurer, and two companies of which he was the principal shareholder, Fast Motor Service, Inc. (Fast Motor), and U.S. International, Inc. (USI), were customers of the Bank. The plaintiff, then known as Capitol Leasing, Inc., was one of the Bank's largest customers.

From June 1988 through May 31, 1989, Cosentino engaged in a check kiting scheme whereby reciprocal checks were circulated between a USI account at the Bank and a Fast Motor account at Cole Taylor Drovers Bank (Drovers). Although Cosentino knew that insufficient funds were on deposit in either account to cover the reciprocal checks drawn on them, he initiated the scheme to create apparent positive balances in both accounts, thereby concealing large overdrafts that existed in both accounts. By the end of 1988, the Bank's Directors were aware of substantial overdrafts in USI's account at the Bank written against deposits of checks drawn on Fast Motor's account at Drovers.

In or around May 1989, Drovers advised the Bank that it would no longer accept USI checks drawn on the Bank to cover overdrafts in Fast Motor's account at Drovers. In order to cover a substantial overdraft in Fast Motor's account, the Bank wire transferred $1,300,000 to Drovers on or about May 31, 1989, resulting in a $1,536,295 negative balance in USI's account at the Bank on that day. In addition to the overdrafts in USI's account, Fast Motor owed the Bank over $250,000 as a result of loans.

DeNicholas and Vercillo asked Terry Brown, the plaintiff's president and principal shareholder, to make a $1,950,000 loan from the plaintiff to Cosentino as an accommodation to the Bank that would enable Cosentino to pay off $1,950,000 in overdrafts. DeNicholas and Vercillo told Terry Brown that Cosentino, Fast Motor, and USI were sound credit risks, and that the loan would be repaid by the end of 1989 from the proceeds of a Small Business Administration (SBA) loan that Cosentino had applied for on behalf of Fast Motor. As further inducement, DeNicholas and Vercillo represented that the loan would be guaranteed by the Bank and co-signed by its chairman, Wells. They also told Terry Brown that the Bank could not make the loan to Cosentino because, if it did, Cosentino's aggregate borrowings from the Bank would exceed federal regulatory lending limits to a single borrower.

Terry Brown agreed to allow the plaintiff to make the requested loan to Cosentino. The following events then occurred on June 29 and 30, 1989. DeNicholas and Vercillo delivered to the plaintiff an unsecured note for $1,950,000 dated June 29, 1989, which was signed by Cosentino as the maker and co-signed by Wells. Accompanying

the note was a "Standby Letter of Guarantee" dated June 29, 1989, which was typed on Bancorp stationary and executed by DeNicholas and Vercillo as president and vice-president, respectively. The standby letter of guarantee obligated the "issuer" to buy back the Cosentino note in the event of a default. For its part, the plaintiff delivered to DeNicholas and Vercillo a check for $1,950,000 payable to Cosentino "and/or" Wells. After the exchange of the plaintiff's check for the note and the standby letter of guarantee, DeNicholas and Vercillo delivered the check to Wells, who endorsed it and deposited it to USI's account at the Bank. This deposit cleared the overdrafts then existing in USI's account.

In April 1990, DeNicholas and Vercillo requested that the plaintiff restructure the Cosentino loan. They represented to Terry Brown that Cosentino, then a candidate for Illinois Secretary of State, wanted Wells removed as a co-signor of the note because Wells was being investigated by federal authorities. Thereafter, Terry Brown met with DeNicholas, Vercillo, Richard M. Randick, and Don Dybus to discuss the restructuring request. These defendants proposed that the plaintiff cancel Cosentino's original note in exchange for new notes executed by Cosentino, High, Robbins, and Polk. DeNicholas and Vercillo provided the plaintiff with personal financial statements for High, Robbins, and Polk.

On April 19, 1990, the plaintiff cancelled Cosentino's original note in exchange for the following: a $1 million note dated April 19, 1990, signed by Cosentino and guaranteed by High; a $450,000 note dated April 19, 1990, signed by Cosentino; a $250,000 note dated April 19, 1990, signed by Robbins; and a $250,000 note dated April 19, 1990, signed by Polk. Additionally, DeNicholas and Vercillo orally represented to Terry Brown that the standby letter of guarantee applied to the restructured loan and that the Bank continued to be obligated thereon.

The notes executed by Cosentino, Robbins, and Polk fell into default. Thereafter, in December 1990, the plaintiff made demand on the Bank to buy back the notes pursuant to the standby letter of guarantee. The Bank, through DeNicholas and Vercillo, refused to honor the demand.

On May 17, 1991, the Bank was closed by order of the Comptroller of the Currency and placed in receivership with the Federal Deposit Insurance Corporation (FDIC).

On June 3, 1992, DeNicholas and Vercillo pled guilty to criminal charges stemming, in part, from their execution of the standby letter of guarantee without having obtained authorization from either the Bank's Directors or Bancorp's Directors.

The notes held by the plaintiff were never repaid, prompting the initiation of this action. The plaintiff's original complaint was divided into 14 counts, styled: "Count I—Negligent Misrepresentation" against the Bank's Directors; "Count II—Fraud" against Vercillo, DeNicholas, Wells, Carelli III, Cosentino, Richard M. Randick, and Don Dybus; "Count III—Unjust Enrichment" against the Bank's Directors; "Count IV—Constructive Fraud" against the Bank's Directors; "Count V—Breach of Fiduciary Duties" against the Bank's Directors; "Count VI—Negligence" against the Bank's Directors; "Count VII—Conversion" against the Bank's Directors and the Bank's officers; "Count VIII—Breach of Promissory Note" against Cosentino; "Count IX—Breach of Promissory Note" against Charles E. Robbins; "Count X—Breach of Promissory Note" against Dennis Polk; "Count XI—Breach of Guaranty" against Michael High, Sr.; "Count XII—Breach of Guaranty" against Bancorp; "Count XIII—Breach of Guaranty" against the Shareholders; and "Count XIV—Breach of Warranty of Authority and Violation of Ill. Rev. Stat. ch 32, § 3.20" against DeNicholas and Vercillo.

Pursuant to motions filed by the defendants under sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 1994)), the trial court entered a memorandum opinion and order on November 18, 1994, dismissing, "with prejudice": count I, the plaintiff's negligent misrepresentation claim, as against all of the Bank's Directors except Vercillo; count II, the plaintiff's fraud claim, as against each of the defendants except Vercillo; and counts III, IV, V, VI, VII and XIII, the plaintiff's claims for unjust enrichment, constructive fraud, breach of fiduciary duties, negligence, conversion and breach of guaranty against the Shareholders, respectively, in their entirety. The court also dismissed count XII, the plaintiff's breach of guaranty claim against Bancorp, along with count XIV, the plaintiff's statutory breach of warranty of authority claim, but granted the plaintiff leave to amend both counts. In that same order, the trial court partially granted the plaintiff's pending summary judgment motion on the issue of liability against Cosentino for breach of his promissory note as pled in count VIII of the plaintiff's complaint, and denied the plaintiff's motions for summary judgment against Robbins and Polk for breach of their promissory notes as pled in counts IX and X, respectively. The court entered no order relating to count XI of the plaintiff's complaint as High did not move for its dismissal.

The plaintiff moved the court to reconsider its order of November 18 and sought leave to file its proposed first amended complaint. The plaintiff's proposed first amended complaint addressed a number of

the deficiencies noted by the court in its November 18 order, deleted the conversion claim against the Bank's Directors, and sought to add counts alleging that the Bank's Directors, along with Cosentino, Robbins, Polk, High, Randick and Dybus, engaged in a scheme to defraud, and that the Bank's Directors, Bancorp's Directors, and the Shareholders had breached their warranty of authority. The proposed first amended complaint, predicated upon essentially the same operative facts set forth in the plaintiff's original complaint, was also divided into 14 counts, namely: "Count I—Scheme to Defraud" against the Bank's Directors, Cosentino, Robbins, Polk, High, Randick, and Dybus; "Count II—Negligent Misrepresentation" against the Bank's Directors; "Count III—Fraud" against Vercillo, DeNicholas, Wells, Polk, Robbins, High, Randick, and Dybus; "Count IV—Unjust Enrichment" against the Bank's Directors; "Count V—Constructive Fraud" against the Bank's Directors; "Count VI—Breach of Fiduciary Duties" against the Bank's Directors; "Count VII—Negligence" against the Bank's Directors; "Count VIII—Breach of Promissory Note" against Robbins; "Count IX—Breach of Promissory Note" against Polk; "Count X—Breach of Guaranty" against High; "Count XI—Breach of Guaranty" against Bancorp; "Count XII—Breach of Guaranty" against the Shareholders; "Count XIII—Breach of Warranty of Authority and Violation of Ill. Rev. Stat. ch 32, § 3.20" against the Bank's Directors, Bancorp's Directors, and the Shareholders; and "Count XIV—Breach of Warranty of Authority and Violation of Ill. Rev. Stat. ch 32, § 3.20" against DeNicholas and Vercillo.

On June 12, 1995, the trial court issued a memorandum opinion and order on the plaintiff's motion to reconsider and for leave to file its proposed first amended complaint. On the request for reconsideration, the court granted the plaintiff a period of 28 days to file an amended complaint raising negligent misrepresentation and fraud claims against DeNicholas as pled in counts I and II, respectively, of the plaintiff's original complaint. The trial court denied the plaintiff's motion for leave to file its 14-count proposed first amended complaint. The court did, however, grant the plaintiff a period of 28 days to file two amended fraud claims against Vercillo, DeNicholas, Polk, Robbins, High, Randick, and Dybus; an amended statutory breach of warranty of authority claim against Vercillo and DeNicholas; and an amended claim alleging a scheme to defraud or civil conspiracy against Wells, Polk, Robbins, High, Randick, and Dybus. The order provided that, except as to the specific amended claims that the plaintiff was granted leave to file against Vercillo, DeNicholas, Wells, Polk, Robbins, High, Randick, and Dybus, the plaintiff was denied leave to file an amended complaint against the other defendants and,

further, that the other defendants were dismissed from the action "with prejudice." The trial court also found in the June 12 order that "[n]o just reason exists to delay [its] enforcement or appeal." Thereafter, on July 12, 1995, the trial court entered an order clarifying its June 12 order specifically setting forth the amended pleadings that could be filed by the plaintiff and against whom those pleadings could be filed. Also on July 12, 1995, the plaintiff filed the instant appeal from the trial court's orders of November 18, 1994, and June 12, 1995.

On August 7, 1995, with prior leave of the trial court, the plaintiff filed its "Second Amended Complaint" in this action. That complaint, which is not the subject of this appeal, is divided into eight counts, namely: "Count I—Scheme to Defraud/Civil Conspiracy" against Wells, Robbins, Polk, High, Randick, and Dybus; "Count II— Negligent Misrepresentation" against DeNicholas and Vercillo; "Count III—Fraud" against DeNicholas and Vercillo; "Count IV— Fraud" against DeNicholas, Vercillo, Robbins, Polk, High, Randick, and Dybus; "Count V—Breach of Promissory Note" against Robbins; "Count VI—Breach of Promissory Note" against Polk; "Count VII— Breach of Guaranty" against High; and "Count VII [sic]—Breach of Warranty of Authority and Violation of Ill. Rev. Stat. ch. 32, § 3.20" against DeNicholas and Vercillo.

DeNicholas filed a motion to dismiss this appeal, arguing that by filing its "Second Amended Complaint," the plaintiff waived the right to appeal from the trial court's orders dismissing portions of its original complaint and denying it leave to file its proposed first amended complaint. We took this motion for disposition with the case.

For its part, the plaintiff has moved to strike portions of DeNicholas' brief, contending that he improperly seeks an advisory opinion from this court on an issue still pending before the trial court. We also took the plaintiff's motion for disposition with the case. Before addressing the issues as framed by the plaintiff, we will dispose of DeNicholas' motion to dismiss.

In support of his motion, DeNicholas asserts that by filing its "Second Amended Complaint" and failing to incorporate the counts of its original complaint that were dismissed "with prejudice" on November 18, 1994, and the counts of its proposed first amended complaint, which the trial court denied leave to file on June 12, 1995, the plaintiff waived the right to seek appellate review of either order. See *Foxcraft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 449 N.E.2d 125 (1983); *Du Page Aviation Corp. v. Du Page Airport Authority*, 229 Ill. App. 3d 793, 594 N.E.2d 1334 (1992).

The plaintiff argues that application of the waiver doctrine to the

facts of this case would be inconsistent with both Illinois Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) and the directions of the trial court when it issued its June 12 order. We agree.

■ We have no quarrel with the general proposition that "a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints." *Foxcraft Townhome Owners Ass'n*, 96 Ill. 2d at 153. However, none of the cases cited by DeNicholas in support of his motion to dismiss involve a situation where the amended pleading was filed after the plaintiff had perfected an appeal from an order dismissing fewer than all of the claims in its prior complaint. Nothing in the filing of the plaintiff's "Second Amended Complaint" in this case after it had perfected its appeal from the trial court's orders of November 18 and June 12 evinces any intention on the part of the plaintiff to abandon the claims pled in the dismissed counts. In point of fact, once the plaintiff filed its notice of appeal in this case, the trial court lacked jurisdiction to permit the filing of any amended pleading that might moot this appeal. Once the jurisdiction of the appellate court attaches, the trial court retains jurisdiction of a case to hear and determine only those matters that are independent of and unrelated to that portion of the proceedings that pends on appeal. *Home Savings & Loan Ass'n v. Samuel T. Isaac & Associates, Inc.*, 99 Ill. App. 3d 795, 425 N.E.2d 985 (1981). In this case, the plaintiff perfected its appeal pursuant to Rule 304(a), thus removing from the jurisdiction of the trial court all matters relating to the claims that are the subject of this appeal. The trial court did, however, retain jurisdiction to allow the filing of amended pleadings limited to claims that raise issues independent of the issues before us. Consequently, we find that the filing of the plaintiff's "Second Amended Complaint" did not act as a waiver of the plaintiff's right to pursue this appeal, and we deny DeNicholas' motion to dismiss.

We will next address the substantive issues presented for review on the plaintiff's appeal. Because the trial court dismissed a number of counts in the plaintiff's original complaint in response to motions to dismiss brought pursuant to section 2—615 of the Code, one of the questions to be resolved by this court is whether the dismissed counts state causes of action upon which relief could be granted. *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 565 N.E.2d 654 (1990), *overruled on other grounds in McCuen v. Peoria Park District*, 163 Ill. 2d 125, 643 N.E.2d 778 (1994); *Janes v. First Federal Savings & Loan Ass'n*, 57 Ill. 2d 398, 312 N.E.2d 605 (1974). The issue is one of law and our review is *de novo. Metrick v. Chatz*, 266 Ill. App. 3d 649, 639 N.E.2d 198 (1994). Additionally, we must determine if the trial court abused its discretion in refusing to grant the plaintiff leave to file its

proposed first amended complaint. See *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 586 N.E.2d 1211 (1992).

■ In resolving these issues, we must take all well-pleaded facts in the plaintiff's original and proposed first amended complaints as true and draw all reasonable inferences from those facts that are favorable to the plaintiff. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 566 N.E.2d 1365 (1991). However, conclusions of law or fact contained in the pleadings will not be taken as true unless supported by specific factual allegations. *Ziemba*, 142 Ill. 2d at 47.

■ Even in cases where an original complaint is arguably deficient and subject to being stricken, error occurs if a trial court abuses its discretion in denying the plaintiff leave to amend. *Bowe v. Abbott Laboratories, Inc.*, 240 Ill. App. 3d 382, 608 N.E.2d 223 (1992). If a plaintiff can state a cause of action by amending its complaint, a dismissal with prejudice on the pleadings should not be granted. *Bowe*, 240 Ill. App. 3d at 389.

Our analysis of the substantive issues presented in this appeal has been made extremely difficult due to the manner in which the plaintiff chose to plead its original and proposed first amended complaints. The plaintiff's original complaint contains 83 paragraphs of allegations presumptively common to all counts. The plaintiff then set forth its various claims, divided into 14 counts, each of which not only incorporates the 83 paragraphs of common allegations and sets forth additional allegations necessary to state the claims asserted, but also incorporates all of the allegations set forth in each preceding count. This pleading style results in every count from II through XIV containing not only multiple causes of action, but also numerous extraneous allegations wholly irrelevant to the specific cause of action being pled. The same observation is true of the plaintiff's proposed first amended complaint, which was made even more prolix by the plaintiff's inclusion of 111 paragraphs of allegations common to all counts. These complaints are the antithesis of the plain and concise statement of the plaintiff's causes of action as mandated by section 2—603(a) of the Code. 735 ILCS 5/2—603(a) (West 1994).

(Parts A through E are nonpublishable under Supreme Court Rule 23.)

F. Breach of Warranty of Authority.

In its original complaint, the plaintiff pled an action against DeNicholas and Vercillo in count XIV captioned "Breach of Warranty of Authority and Violation of Ill. Rev. Stat. ch. 32, § 3.20." The gist of the count was that, in executing the standby letter of guarantee without authority from the directors of Bancorp or the

Bank, DeNicholas and Vercillo became personally liable thereon. The trial court denied a motion to dismiss this count on November 18, 1994. A similar claim now pends in the circuit court as the second numbered count VII of the plaintiff's second amended complaint.

Count XIII of the plaintiff's proposed first amended complaint set forth a claim entitled "Breach of Warranty of Authority and Violation of Ill. Rev. Stat. ch. 32, § 3.20" and sought relief against the Bank's Directors, Bancorp's Directors, and the Shareholders. The plaintiff alleged that the named defendants are personally liable on the standby letter of guarantee as they authorized its issuance without authority to do so.

Plaintiff claims that the trial court erred in denying it leave to file count XIII of its proposed first amended complaint, arguing that section 3.20 of the Illinois Business Corporation Act of 1983 (the Act) (805 ILCS 5/3.20 (West 1994)) renders all persons who exercise corporate powers without authority personally liable for all debts and liabilities incurred or arising as a result thereof. Both DeNicholas and the Outside Directors responded to the plaintiff's arguments in separate briefs. The plaintiff has moved to strike that portion of DeNicholas' brief which addresses this issue, contending that, in actuality, DeNicholas improperly seeks an advisory opinion on a matter pending before the trial court. We took this motion with the case and will now dispose of it before addressing the substantive issues relating to count XIII.

■ The plaintiff fixed the issues it chose to raise on appeal. Any defendant, including DeNicholas, having an interest in our resolution of those issues had a right to file a responding brief. By virtue of his status as one of the defendants against whom recovery was sought in count XIII of the plaintiff's proposed first amended complaint, DeNicholas has standing to make any well-grounded argument in support of the trial court's order denying the plaintiff leave to file the count. The mere fact that DeNicholas' argument that count XIII fails to state a cause of action as a matter of law might also be applicable to a claim that still pends against him in the trial court is of no moment. The plaintiff has appealed from an order which denied it leave to file a specific claim against a number of defendants, including DeNicholas, and DeNicholas has a right to respond to the plaintiff's arguments in that regard. Consequently, the plaintiff's motion to strike a portion of DeNicholas' brief is denied.

■ The final issue for our consideration is the propriety of the trial court's order denying the plaintiff leave to file count XIII of its proposed first amended complaint. As near as we are able to understand from the count in issue and the plaintiff's brief, the

plaintiff contends that the standby letter of guarantee violated the provisions of 12 U.S.C. § 24 (1994), which prohibits a national bank from guarantying the obligations of a third party. From that premise and based upon the provisions of section 3.20 of the Act, the plaintiff concludes the Bank's Directors, Bancorp's Directors, and the Shareholders are personally liable on the instrument since, by authorizing its issuance, they assumed to exercise corporate powers without authority.

Section 3.20 of the Act provides:

> "All persons who assume to exercise corporate powers without authority to do so shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." 805 ILCS 5/3.20 (West 1994).

Our research fails to reveal any Illinois case where this provision of the Act was construed to impose personal liability upon one acting on behalf of a duly organized and existing corporate entity. The only circumstances in which this statute has been applied are those where a defendant acted before incorporation or after a corporation was dissolved. See *H&H Press, Inc. v. Axelrod*, 265 Ill. App. 3d 670, 638 N.E.2d 333 (1994); *Richmond Wholesale Meat Co. v. Hughes*, 625 F. Supp. 584 (N.D. Ill. 1985). Further, as DeNicholas points out in his brief, other jurisdictions with statutes similar to section 3.20 impose personal liability only upon those who act on behalf of a nonexistent corporation. See, *e.g., DBA/Delaware Systems Corp. v. Greenfield*, 636 A.2d 1318 (R.I. 1994); *Micciche v. Billings*, 727 P.2d 367 (Colo. 1986); *American Vending Services, Inc. v. Morse*, 881 P.2d 917 (Utah App. 1994); *Smith v. Halliburton Co.*, 118 N.M. 179, 879 P.2d 1198 (1994); *Blue Profit Sharing Plan v. Terrazas*, 166 Ariz. 111, 800 P.2d 977 (1990); *Harry Rich Corp. v. Feinberg*, 518 So. 2d 377 (Fla. App. 1987); *Company Stores Development Corp. v. Pottery Warehouse, Inc.*, 733 S.W.2d 886 (Tenn. App. 1987); *Robertson v. Levy*, 197 A.2d 443 (D.C. App. 1964).

Since both the Bank and Bancorp were existing corporations at the time that the standby letter of guarantee was executed, even assuming that its issuance was *ultra vires*, the Bank's Directors, Bancorp's Directors, and the Shareholders are not subject to personal liability thereon under section 3.20 of the Act.

Further, to the extent that count XIII of the plaintiff's proposed first amended complaint might be read as an attempt to state a common law action for breach of the warranty of authority, it fails as against all of the defendants except DeNicholas and Vercillo as none of the other defendants are alleged to have executed the standby letter of guarantee. As to DeNicholas and Vercillo, the count in this

regard is wholly duplicative of the claim pled by the plaintiff in count XIV of its original complaint, which still pends in the trial court as count VII of its second amended complaint. Accordingly, we affirm the trial court's order denying the plaintiff leave to file count XIII of its proposed first amended complaint.

The following is a summary of our disposition of the issues before us.

We deny both DeNicholas' motion to dismiss and the plaintiff's motion to strike a portion of DeNicholas' brief.

We affirm the following trial court rulings: dismissal of count I of the plaintiff's original complaint and denial of leave to file count II of its proposed first amended complaint against Wells, Stone, Alcock, Burstein, Carelli, Carelli III, Cunningham, Eiseman, Kirchschlager, Nagy, Rosenow, and Stefo; dismissal of count VI of the plaintiff's original complaint and denial of leave to file count VII of its proposed first amended complaint; denial of leave to file count I of the plaintiff's proposed first amended complaint against Cosentino; dismissal of counts IV and V of the plaintiff's original complaint and denial of leave to file counts V and VI of its proposed first amended complaint; dismissal of count XIII of the plaintiff's original complaint and denial of leave to file count XII of its proposed first amended complaint; and denial of leave to file count XIII of the plaintiff's proposed first amended complaint.

We reverse the following trial court rulings: denial of leave to file count I of the plaintiff's proposed first amended complaint against Stone, Alcock, Burstein, Carelli, Carelli III, Cunningham, Eiseman, Kirchschlager, Nagy, Rosenow, and Stefo; denial of leave to file count III of the plaintiff's proposed first amended complaint against Wells; dismissal of count III of the plaintiff's original complaint and denial of leave to file count IV of its proposed first amended complaint; and denial of leave to file count XI of the plaintiff's proposed first amended complaint.

Based upon the foregoing, we remand this cause to the circuit court for further proceedings.

Affirmed in part and reversed in part; cause remanded.

CAHILL and THEIS, JJ., concur.